RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0122p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SEAN KING,

　　　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

KEVIN AMBS, Columbia Township Police Officer, in
his individual capacity,

　　　　　　　　　*Defendant-Appellee.*

No. 06-2054

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-74867—Paul D. Borman, District Judge.

Argued: April 17, 2007

Decided and Filed: March 21, 2008

Before: ROGERS and COOK, Circuit Judges; O'MALLEY, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Mark Granzotto, LAW OFFICE, Royal Oak, Michigan, for Appellant. G. Gus Morris,
KUPELIAN, ORMOND & MAGY, Southfield, Michigan, for Appellee. **ON BRIEF:** Mark
Granzotto, LAW OFFICE, Royal Oak, Michigan, Thomas L. Kent, GREEN, GREEN, ADAMS &
KENT, Ann Arbor, Michigan, for Appellant. G. Gus Morris, D. Randall Gilmer, KUPELIAN,
ORMOND & MAGY, Southfield, Michigan, for Appellee.

　　　ROGERS, J., delivered the opinion of the court, in which COOK, J., joined. O'MALLEY,
D. J. (pp. 8-17), delivered a separate dissenting opinion.

---

**OPINION**

---

　　　ROGERS, Circuit Judge. This is an appeal from summary judgment entered in favor of a
police officer in a § 1983 action. Officer Kevin Ambs was questioning a third party, Nicholas Klein,
when plaintiff Sean King told Klein not to speak to the officer. After King had twice told Klein not
to talk to the officer, Officer Ambs threatened to arrest King if he said "one more word." King told
Klein a third time not to speak to the officer, at which point Officer Ambs arrested King. Relying

---

[*] The Honorable Kathleen McDonald O'Malley, United States District Judge for the Northern District of Ohio,
sitting by designation.

on *Houston v. Hill*, 482 U.S. 451 (1987), King argues that the arrest violated his First and Fourth Amendment rights. Officer Ambs argues that the arrest did not violate the Constitution and that he is entitled to qualified immunity. The district court granted Officer Ambs' motion for summary judgment and held that King's interference with Officer Amb's investigation provided probable cause for the arrest. We affirm the district court's judgment.

On December 15, 2002, after 3:00 a.m., Officer Kevin Ambs of the Columbia Township Police Department was on a routine patrol when he came upon an unlocked vehicle improperly parked in a rural residential area. Officer Ambs stopped his patrol car, ran the license plate number of the vehicle, then exited his patrol car, shined a light into the vehicle, and saw marijuana on the dashboard. Officer Ambs seized the marijuana, called for a wrecker to impound the vehicle, and began an inventory search of the vehicle.

Klein's house was across the street from the vehicle that Officer Ambs was searching. While Officer Ambs was conducting the search, King and Lucas Anderson came out of Klein's residence, approached the vehicle, and asked Officer Ambs why he was searching the vehicle. Officer Ambs asked King and Anderson whether either of them was the registered owner of the vehicle, and both responded that they were not. After King initially denied that he knew the owner of the vehicle, he told Officer Ambs that the registered owner was in the house across the street. During this exchange at the vehicle, King and Anderson told Officer Ambs that he did not have the right to search the vehicle. King testified that Officer Ambs then threatened to arrest King and Anderson for hindering an investigation. Officer Ambs claims that he smelled alcohol on King and Anderson, and he threatened to arrest the two men for public intoxication. King and Anderson laughed at the officer when he threatened to arrest them because, according to King, they did not think that they had done anything wrong. Officer Ambs asked whether the men had been drinking; both responded that they had but claimed to be twenty-one (though King was only twenty at the time), and they offered to show the officer their identifications.

King and Anderson decided to return to the house because they felt that they had "asked enough questions" of Officer Ambs and did not believe that they would be able to stop him from impounding their friend's vehicle. Officer Ambs followed King and Anderson to the Klein home. Klein's home had a glass entryway leading to the front door of the house. When Officer Ambs tried to open the glass door to the entryway, Anderson held onto the handle from the inside to prevent the door from opening and, in response, Officer Ambs told Anderson that he would go to jail if he kept resisting. Once Officer Ambs was in the entryway with King and Anderson, he knocked on the front door. Nick Klein answered and identified himself as a resident of the house. King and Anderson immediately stepped into the house while the officer remained in the entryway.

Officer Ambs asked Klein to step outside the house, and Klein responded by stepping into the doorway between the house and the entryway, leaving the door to the house open. As Klein went to exit the house, King and Anderson urged Klein not to go outside the house and told Klein that he did not have to talk to the officer. Officer Ambs testified that both King and Anderson "would speak over" him. King claims that he "was not speaking over Officer Ambs and was in no way interfering, physically or verbally, with Officer Amb's attempt to speak with Mr. Klein." As Officer Ambs continued his interview with Klein, King again advised Klein that he did not have to speak to the officer and told Klein that he did not have to go outside with Officer Ambs. Officer Ambs then advised King that "if he said one more word that he would be arrested." At this point, according to King, Klein "went to step outside of the house . . . and began to shut the door" with King inside the house. A third time, King told Klein that he did not have to talk to the officer. Officer Ambs then entered the house, grabbed King's arm, and told King that he was under arrest. King broke free of Officer Ambs' grasp and retreated into the Klein home. Officer Ambs followed King through the house before forcibly subduing King with pepper spray. Officer Ambs then searched King and found a glass smoking pipe in his pocket.

King was taken to jail and was given a breathalyser test that showed a reading of 0.14, above the Michigan standard for intoxication of .08. King was charged with being drunk in public, opposing an officer in the performance of his duty, resisting arrest, and possessing marijuana. On March 24, 2003, the state district court dismissed all charges against King. First, the state court dismissed the public drunkenness charge because the local ordinance under which King was charged had been superseded by a state statute. Second, the state court found that Officer Ambs had no probable cause to arrest King for opposing an officer. Relying on the Michigan Supreme Court opinion in *People v. Vasquez*, 631 N.W.2d 711 (Mich. 2001), which interpreted a different state statute (M.C.L. § 750.479), the state court held that the local ordinance prohibiting opposing an officer in the performance of his duties prohibited only "actual physical interference." Having held that there was no probable cause for King's arrest, the state court dismissed the charge of resisting arrest, granted King's motion to suppress the glass pipe, and then dismissed the charge of possession of marijuana.

King subsequently filed this § 1983 action. King alleges that his arrest was in violation of his rights under the First and Fourth Amendments. Officer Ambs moved for summary judgment, claiming qualified immunity. The district court held a hearing, granted Officer Ambs' motion, and held that Officer Ambs did not violate King's Fourth Amendment rights because King's verbal interference with the officer's investigation amounted to a "physical interruption of the questioning," which provided probable cause for the arrest. The court concluded that Officer Ambs did not violate King's First Amendment rights because it was "the fact of the interference" with the performance of police duties rather than the content of King's words themselves that constituted the basis for the arrest. The court also held, in the alternative, that even if there had been a violation of either or both rights, the violation would not have been clearly established. King now appeals the district court's grant of summary judgment.

Because Officer Ambs had probable cause to arrest King, Officer Ambs did not violate King's Fourth Amendment rights. King was arrested for disorderly conduct because he obstructed Officer Ambs' questioning of Klein in the course of a criminal investigation. Columbia Township Ordinance § 28.3.3 defined a disorderly person as, "A person who obstructs, resists, impedes, hinders or opposes a peace officer in the discharge of his or her duties." King argues that under Michigan law obstruction is limited to "physical obstruction," and therefore King's conduct was not prohibited by the statute. In so arguing, King relies on the holding in *People v. Vasquez*, 631 N.W.2d at 728. However, as the district court reasoned below, *Vasquez* involved a textually different statute and meaningfully different facts.

The defendant in *Vasquez* had been charged with violation of Michigan's "resisting and obstructing" statute, M.C.L. § 750.479. That statute provided in relevant part that, "Any person who shall knowingly and willfully . . . obstruct, resist, oppose, assault, beat or wound . . . any person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace shall be guilty of a misdemeanor . . . ." *Vasquez*, 631 N.W.2d at 714 (quoting M.C.L. § 750.479 as it then provided). The question before the Michigan Supreme Court was whether "obstruction" as used in the state statute criminalized the conduct of a defendant who lied to a police officer about his name and age. *Id.* In holding that it did not, the Michigan Supreme Court held that the state statute proscribed "threatened, either expressly or impliedly, physical interference and actual physical interference with a police officer." *Id.* In holding that "obstruct" in this statute was limited to physical obstruction, the court emphasized that "the statute uses the word 'obstruct' as part of a list containing five other words, namely, 'resist, oppose, assault, beat [and] wound'" and that the term had to be given a meaning "logically related to the five surrounding words." *Id.* at 715. Three of the five verbs (assault, beat, and wound) clearly imply physical action.

In contrast to the state statute in *Vasquez*, the list of terms in the Columbia Township Ordinance, "obstruct[], resist[], impede[], hinder[] or oppose[]," presents a less apparently physical context in which to interpret the term "obstruct." Given this difference, the "physical obstruction" limitation imposed on the term "obstruct" in *Vasquez* may not apply to obstruction in this separate statutory context.

This distinction is directly supported by our analysis in a § 1983 case involving an arrest for refusing to provide identification. *See Risbridger v. Connelly*, 275 F.3d 565, 569 n.3 (6th Cir. 2002). *Risbridger* was a § 1983 case in which an officer who arrested the plaintiff for failing to provide identification relied on a city ordinance that made it a misdemeanor to "[a]ssault, obstruct, resist, hinder, or oppose any member of the police force . . . in the discharge of his/her duties as such." *Id.* at 568. In upholding a qualified immunity determination, we explicitly rejected the plaintiff's reliance on *Vasquez*: "Unlike the Michigan statute [in *Vasquez*], however, the language of the city's ordinance, which makes it unlawful to assault, obstruct, resist, hinder or oppose an officer, does not as a whole imply that physical interference is required to establish a violation." *Id.* The ordinance in *Risbridger*, unlike the one in the instant case, contained the word "assault." The reasoning of *Risbridger* thus directly supports reading the ordinance in this case to extend to nonphysical obstruction, notwithstanding *Vasquez*. In *Risbridger* we also found it significant that, as in this case, "we are not asked to determine whether there was sufficient evidence to support a conviction [as in *Vasquez*], but only whether there was probable cause at the time of the arrest to believe the city's ordinance had been violated." *Id.*

Moreover, the conduct for which King was arrested is very different than the conduct at issue in *Vasquez*. The defendant in *Vasquez* was charged with obstruction because, after he was arrested, it was discovered that he had given the police a false name and age. *Id.* at 714. King, on the other hand, was arrested after repeatedly interrupting an officer who was questioning a third party. As the district court observed, "Plaintiff's conduct in persisting to interfere with Officer Ambs' investigation amounted to a physical interruption of the questioning." *King v. Ambs*, No. 04-74867, 2006 WL 800751, *6 (E.D. Mich. Mar. 28, 2006). The district court's characterization of King's interruption as "physical" finds support in *Vasquez* itself, in which the lead opinion expressly contemplated that such actions as refusing to comply with a search warrant would be sufficiently "physical" even under the statute at issue in *Vasquez*: a "defendant's refusal to comply with the search warrant, although not an express threat of physical interference, was sufficient to support a charge under the statute because by refusing to cooperate, defendant was, in effect, physically interfering with the police officers." 631 N.W.2d at 720. *Cf. Houston v. Hill*, 482 U.S. 451, 463 (1987) ("by shouting and running beside [an] officer the person may *physically obstruct* the officer's investigation" (emphasis added)); *State v. Occhino*, 572 N.W.2d 316, 320-21 (Minn. Ct. App. 1997) (applying Minnesota's obstruction statute that had been narrowly construed to criminalize only "physical" obstruction, and holding that plaintiff's "intentional repeated verbal interruptions exceeded ordinary verbal criticism of the police and rose to the unlawful level in which his words had the effect of physically interfering with [an officer's] performance of [his] official duties"). Thus, even if the Columbia Township Ordinance were subject to *Vasquez*'s construction of the term "obstruction," King's conduct could be characterized as "physical interference" in the sense that King's speech interrupted Officer Ambs in a way that made it difficult, if not impossible, to conduct actual questioning.

If the Columbia Township ordinance is construed in either of the ways suggested above, then Officer Ambs had probable cause to arrest King for violation of the Columbia Township ordinance, and therefore the arrest did not violate King's Fourth Amendment rights. *See Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003). However, even if under Michigan law the holding of *Vasquez* were extended to apply to the local ordinance and the conduct at issue in this case, and if the requirement of "physical interference" were interpreted narrowly in this new context so as not to cover King's conduct, Officer Ambs would still be entitled to qualified immunity.

"Qualified immunity is an affirmative defense that shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Causey v. Bay City*, 442 F.3d 524, 528 (6th Cir. 2006) (internal quotation marks omitted). "There are two steps in the analysis: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). As demonstrated above, there was no constitutional violation and the first step of *Saucier* is not met. Assuming however that there was a Fourth Amendment violation, at the time of King's arrest, the application of the *Vasquez* holding to the ordinance and facts of this case had not been clearly established.

When considering a claim of qualified immunity, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Because *Vasquez* interpreted a statute other than the local ordinance on which Officer Ambs relied and considered facts that were very different than those actually confronted by Officer Ambs, *Vasquez* could not have clearly established that Officer Ambs' conduct in arresting King for obstruction was without probable cause. We have, albeit in an unpublished opinion, accorded qualified immunity to an officer who had made an arrest under a state statute that we concluded was not applicable, where the state's case law concerning the scope of the statute was not clear, and where the district court sitting in the state in question had actually held that there was probable cause under the statute. *Nails v. Riggs*, 195 F. App'x 303, 312 (6th Cir. 2006). This case presents the same situation. *See also Santana v. Calderon*, 342 F.3d 18, 30-31 (1st Cir. 2003) (state employee's due process right to retain her job was not clearly established because a property interest was not clearly established under Puerto Rico law); *Young v. Harrison*, 284 F.3d 863, 868-69 (8th Cir. 2002) (evicted guest's right to be free from warrantless search of his hotel room not clearly established because his continuing interest in the hotel room was not clearly established under state law). *Compare Spruytte v. Walters*, 753 F.2d 498, 510-11 (6th Cir. 1985) (denying qualified immunity for due process violations where the meaning of a state regulation creating the property right was clearly established). Summary judgment was therefore proper on King's Fourth Amendment claim.

The district court also properly granted summary judgment on King's First Amendment claim that he was arrested for constitutionally protected speech. Because of the time and manner of King's repeated exhortations to Klein, his statements were not constitutionally protected. As the district court observed, the very case upon which King relies in making his First Amendment claim, *Houston v. Hill*, 482 U.S. 451 (1987), states that a properly tailored statute may criminalize precisely the kind of behavior that prompted King's arrest. *King*, 2006 WL 800751, at *9. While invalidating the city ordinance at issue in *Hill* as overly broad, the Supreme Court observed that "a municipality constitutionally may punish an individual who chooses to stand near a police officer and persistently attempt to engage the officer in conversation while the officer is directing traffic at a busy intersection." *Hill*, 482 U.S. at 463 n.11 (citing *Colten v. Kentucky*, 407 U.S. 104 (1972)). The Court noted that an individual may be punished for "physically obstructing an officer's investigation" as a result of "'contentious and abusive' speech" that "can interrupt an officer's investigation." *Id.* In discussing the kind of speech act that could be criminalized, the Court considered the example of "a person who run[s] beside [an officer pursuing a felon] in a public street shouting at the officer." *Id.* (internal quotation marks omitted). The Court stated that such conduct could be punished because "what is of concern in that example is not simply contentious speech, but rather the possibility that by shouting and running beside the officer the person may physically obstruct the officer's investigation." *Id.* Such obstruction of an ongoing investigation is precisely what prompted King's arrest.

It is true that the underlying facts in *Hill* involved the defendant's shouting at police in an attempt to divert their attention from his friend during a confrontation. *Id.* at 453-54. But the Supreme Court did not hold that such actions could not be criminalized. Instead it ruled that the ordinance in that case could not be enforced at all because it was so broad. The Court relied on the fact that the Houston ordinance "prohibit[ed] speech that 'in *any manner* . . . interrupt[s]'" an officer. 482 U.S. at 461 (emphasis added). The ordinance prohibited merely " interrupt[ing] a city policeman . . . by verbal challenge during an investigation." *Id.* at 454. The criminal defendant prevailed in *Hill* not because he had a constitutional right to engage in the activity he engaged in, but because the ordinance prohibited mere interruption of a policeman. The ordinance in *Hill* would presumably have been just as unconstitutional had the particular plaintiff in *Hill* been charged under the ordinance for an act that also included physical interference. The ordinance in the instant case is of course not so broad, and King does not challenge the ordinance on overbreadth grounds. The statute here does not prohibit mere interruption, but requires instead some form of "obstruction." *See Fair v. City of Galveston*, 915 F. Supp. 873, 879 (S.D. Tex. 1996) (distinguishing *Hill* in a case involving a statute that prohibited "'interfering' with a police officer lawfully executing his duty" because the statute "facially pertains to acts which pose an actual hindrance to the accomplishment of a specified task, as opposed to the ordinance considered in *Hill*, which pertained primarily to verbal acts through use of the term 'interrupt'").

The Supreme Court's holding in *Colten v. Kentucky*, 407 U.S. 104 (1972), further demonstrates that King's repeated interruptions of Officer Ambs' investigation were not protected by the First Amendment. Colten challenged his arrest for disorderly conduct after he repeatedly interrupted a police officer and refused to leave the area where the officer was issuing a traffic citation to Mendez, a third party. *Id.* at 106-07. Colten argued that his arrest violated the First Amendment because "in seeking to arrange transportation for Mendez and in observing the issuance of a traffic citation he was disseminating and receiving information." *Id.* at 109. However, the Court held that Colten "was not engaged in activity protected by the First Amendment" because "[h]e had no constitutional right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation at that time." *Id.* The Court explained that, "[t]he State has a legitimate interest in enforcing its traffic laws and its officers were entitled to enforce them free from possible interference or interruption from bystanders, even those claiming a third-party interest in the transaction." *Id.* The State's interest in Officer Ambs' investigation was at least as great as the interest at stake in *Colten*. Like *Colten*, this case involved the investigation of a traffic violation (an improperly parked car) in addition to evidence of a drug crime, which arguably heightened the State's interest here.

King's conduct in this case differs in no meaningful way from the conduct of the hypothetical person running beside the officer discussed in *Hill* or the defendant in *Colten*. Each case involved an individual whose act of speaking, by virtue of its time and manner, plainly obstructed ongoing police activity involving a third party. King's exhortations to Klein and his refusal to be quiet while Officer Ambs questioned Klein are no more entitled to First Amendment protection than the shouting of *Hill*'s hypothetical runner or Colten's attempts to speak with Mendez after the police ordered Colten to leave.

Unlike *Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002), where we denied the arresting officer's claim to qualified immunity because of questions concerning the officer's true motivation for arresting the plaintiff, there is no material issue as to whether Officer Ambs' decision to arrest King was motivated by the content of the speech in question. In *Greene* we denied summary judgment to the officer actually insulted by plaintiff Greene because, "[t]aken in the light most favorable to Mr. Greene, . . . the record [ ] would entitle a jury to find that the arrest was the product of an improper motive." *Id.* at 897. In contrast, King's statements were not directed at Officer Ambs in any personal way, and King offers no evidence to suggest that Officer Ambs was motived by the content of King's statements rather than the fact of the repeated obstruction. *See Anderson*,

477 U.S. at 252 (requiring plaintiffs to offer more than a scintilla of evidence to defeat a motion for summary judgment).

Similarly, the facts of this case are unlike those in *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007), where this court held that there was a triable issue as to the officer's motive in arresting the plaintiff, albeit a "close case on this point," because "[the plaintiff's] deposition reveal[ed] disputed facts about a prior lawsuit . . ., a feud between the police department and [the plaintiff's] family, and [the police chief's] 'hatred' of [the plaintiff's] wife." *Id.* at 362. There is no indication in this case that Officer Ambs or the Columbia police department had any prior dealings with King that would support a reasonable belief that the arrest here was motivated by anything other than King's disruptive conduct on the night of his arrest. Additionally, unlike in *Leonard*, there is no material dispute about the events that preceded King's arrest. *See id.* ("The recording of the Township meeting, with Leonard off-camera and recorded only in voice, also creates a triable issue on whether Leonard disrupted the meeting and whether Robinson lied about his motive to attend.").

The undisputed facts of this case are that King repeatedly interfered with an ongoing criminal investigation, that after King had done so twice, Officer Ambs warned King that "if he said one more word" he would be arrested for so doing, and that King continued to interfere with the officer's attempt to interview Klein. Based on these facts, and regardless of whether King actually "spoke over" Officer Ambs, it is clear that King was arrested for the act of disrupting the officer's investigation, and not for the content of his speech. We have reached a similar conclusion in other cases involving speaking to a policeman. In *Schliewe v. Toro*, 138 F. App'x 715, 723 (6th Cir. 2005), for instance, we held that "it is abundantly clear" that the plaintiff, arrested under a disorderly conduct statute, "was arrested for bleeding on those around him and threatening [a police officer], regardless of the fact that he used profanity." And in *Johnson v. Estate of Laccheo*, 935 F.2d 109, 112 (6th Cir. 1991), we held that a security guard who said "no" to deny police permission to pass through a gate while pursuing a traffic violator "was not arrested for his speech but, rather, the act of preventing [the officer] from pursuing the traffic violator."

Finally, as with our analysis of King's Fourth Amendment claim above, while King's arrest did not violate any constitutional right, and the first step of the qualified immunity analysis is not met, even if the holding in *Hill* could be extended to apply to King's arrest under the particular facts of this case, Officer Ambs would still be entitled to qualified immunity as to the alleged First Amendment violation. For a violation to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. Because a reasonable officer would not have known that enforcement of the Columbia Township obstruction ordinance in the context of this case violated the First Amendment, the right was not clearly established and Officer Ambs would be entitled to qualified immunity at the second step of the *Saucier* analysis. *See Saucier*, 533 U.S. at 202.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

———————————

**DISSENT**

———————————

KATHLEEN M. O'MALLEY, District Judge, dissenting. The majority, much like the district court before it, appears loathe to allow a civil rights action to proceed where that action would give voice to the complaints of an obnoxious, disrespectful and likely intoxicated young man, whose own classless conduct led to his arrest. I certainly sympathize with that apparent concern. Established First Amendment jurisprudence counsels against indulging such concerns, however, especially in the context presented here.

It has long been the law that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," *Houston v. Hill*, 482 U.S. 451, 461 (1987), even where that verbal criticism fails to satisfy basic standards of courtesy and decorum. There is good reason for this. It is because, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id*. at 462-63.

Because I believe that the majority has not paid sufficient deference to these critical First Amendment principles, and fails to construe the material facts in favor of the non-moving party, I respectfully must dissent.

**I.        *Public Challenge Of Police Conduct Enjoys Substantial First Amendment Protection.***

While the Fourth Amendment is implicated, this is really a First Amendment case. The constitutional issues presented are necessarily intertwined and cannot be analyzed in isolation. *See Enlow v. Tishomingo County, Mississippi*, 962 F.2d 501, 510 (5th Cir. 1992) (First and Fourth Amendment issues arising from the same facts determined to be inextricably intertwined). Plaintiff Sean King's Fourth Amendment claim largely depends on the resolution of his First Amendment claim because "[a]n officer may not base his probable-cause determination on speech protected by the First Amendment." *Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006). Likewise, his First Amendment claim turns on the resolution of his Fourth Amendment claim because "want of probable cause must be alleged and proven by a plaintiff bringing a § 1983 [First Amendment retaliation] suit." *Barnes v. Wright*, 449 F.3d 709, 719 (6th Cir. 2006) (internal quotation marks omitted).

The majority's primary conclusion – that King did not engage in First Amendment "speech" – severely minimizes the First Amendment's expansive reach *in cases involving verbal challenges to police conduct.*[1] In *Houston v. Hill*, a case the majority selectively quotes but does not adequately explore,[2] the Supreme Court made clear that encounters with the police implicate unique First Amendment considerations. 482 U.S. 451 (1987). Specifically, the Court explained that officers are expected to tolerate far more criticism than an average person, and must exercise significant

———————————

[1] As its primary basis for granting qualified immunity, the majority concludes that no constitutional violations occurred. Secondarily, it concludes, somewhat more cryptically, that the rights at issue were not "clearly established" in any event.

[2] For example, the majority quotes an example provided in *Hill*: "a municipality constitutionally may punish an individual who chooses to stand near a police officer and persistently attempt to engage the officer in conversation while the officer is directing traffic at a busy intersection." 482 U.S. at 463 n. 11. As discussed *infra*, this example is not inconsistent with the views expressed herein; it simply illustrates the "physical obstruction" standard *Hill* endorses. Its *selective* use, however, misrepresents the theme of *Hill's* First Amendment discussion, which the majority does not discuss.

restraint in responding to such criticism. *Id*. at 463. This Court has also endorsed this fundamental concept. *See McCurdy v. Montgomery County, Ohio*, 240 F.3d 512 (6th Cir. 2001).[3] By ignoring the heart of these (and other) authorities, the majority has failed to establish a constitutional baseline from which to begin its constitutional inquiry. To that end, I think it is important to note some of the established principles that should mark the starting point for the Court's analysis.

As noted, the Supreme Court highlighted in *Hill* that, "[t]he freedom of individuals verbally to oppose or challenge police action *without thereby risking arrest* is one of the principal characteristics by which we distinguish a free nation from a police state." 482 U.S. at 461 (emphasis added). It continued:

> Speech is often provocative and challenging . . . . [But it] is nevertheless protected against censorship *or punishment*, unless shown likely to produce a clear and present danger of a serious substantive evil that rises *far above* public inconvenience, annoyance, or unrest.

*Id*. (quoting *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949)) (emphasis added). As an example of protected speech, the Court cited *Lewis v. City of New Orleans*, 415 U.S. 130 (1974), which involved a citizen yelling obscenities and threats at a police officer who was in the process of soliciting identification from a third party. Obviously, King's speech was far less offensive and confrontational – he advised a friend of a constitutional right to keep silent, and, at least according to him, did so in a manner which, though perhaps irritating, did not disrupt the officer's ability to continue with an ongoing investigation.[4]

The *Hill* Court then endorsed Justice Powell's observation in his *Lewis* concurrence that "a properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" 482 U.S. at 462 (citing *Lewis*, 415 U.S. at 135) (citation omitted). Ultimately, therefore, the *Hill* Court opined:

> Today's decision reflects the constitutional requirement that, in the face of verbal challenges to police action, *officers and municipalities must respond with restraint.* We are mindful that the preservation of liberty depends in part upon the maintenance of social order . . . . But the First Amendment recognizes, wisely we think, that *a certain amount of expressive disorder* not only is inevitable in a society committed to individual freedom, but *must itself be protected* if that freedom would survive.

*Id*. at 471-71 (internal citations omitted) (emphasis added). Against this backdrop, the Court endorsed the view that only speech rising to the level of a "physical obstruction" to a police officer's investigation loses First Amendment protection. *Id*. at 463 ("today's decision does not leave municipalities powerless to punish physical obstruction of police action . . .").

---

[3] The Supreme Court's and this Court's general discussions of First Amendment jurisprudence in *Hill* and *McCurdy* are clearly relevant to the legal issues presented here. The majority acknowledges that the facts in *Hill* involved an individual shouting at a police officer in an attempt to divert the officer's attention away from the individual's friend, but distinguishes *Hill* only by stating that the Court "did not hold that such actions could not be criminalized . . . it ruled that the ordinance in that case could not be enforced because it was so broad." That *Hill* only involved a constitutional challenge to an ordinance does not minimize the applicability of its expansive First Amendment discussion.

[4] That the *Hill* Court confirmed that the speech in *Lewis* found protection under the First Amendment strongly suggests that the speech in *Hill* similarly was protected. *Hill*, 482 U.S. at 461. The majority's observation that Hill's holding did not specifically address the speech in that case, therefore, is further minimized.

Likewise, and with specific attention to retaliation claims, this Court addressed the First Amendment's expansive protections in *McCurdy v. Montgomery County, Ohio.* In that case, this Court stated that, ever since the day the ink dried on the Bill of Rights, "[t]he right of an American citizen to criticize public officials and policies . . . is 'the central meaning of the First Amendment.'" 240 F.3d 512, 519 (6th Cir. 2001) (citing *Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir.1975)). "There can be no doubt that the freedom to express disagreement with state action, without fear of reprisal based on the expression, is unequivocally among the protections provided by the First Amendment. *Id.* at 519-20. *See also Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir.1997) ("[T]he First Amendment right to criticize public officials is well-established and supported by ample case law . . . it is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983.").

While few, if any, rights are absolute, there can be little doubt, therefore, that the public's right to challenge police activity enjoys *significant* constitutional protection. "Physically obstructive" and, therefore, unprotected speech should be the exception and not the rule. These broad-based concepts should serve as the starting point of the Court's analysis; yet, the majority fails even to mention them. Rather, its analysis evidences a much narrower view of the First Amendment. Whether King's speech presented a "physical obstruction" to Ambs's investigation is an inquiry that simply must be resolved with these broadly protective principles in mind. *Hill*, 482 U.S. at 463. It cannot be resolved properly in a vacuum; and it certainly cannot be resolved based on a biased view of the facts.

Primarily, the majority reasons that King's speech is not protected because it concludes that: (1) the undisputed facts establish that King's words amounted to a "physical obstruction" to Defendant Kevin Ambs's investigation; and (2) there is no evidence to suggest that Ambs's decision to arrest King was motivated by the content of King's speech rather than by the manner in which King spoke. The problem with these conclusions is both that it is simply *not* the case that the material facts are undisputed, and that, even looking only at Ambs's own version of the events, there is little factual support in the record for the majority's factual findings and ultimate legal conclusions.

## II.    *Factual Disputes Prevent Entry Of Summary Judgment At This Stage.*

The majority's conclusions are procedurally flawed because they are grounded upon a version of the facts that notably, if not exclusively, favors Ambs. The majority has not viewed the evidence in a light most favorable to King, as the relevant standards require. This misstep is particularly problematic because the material facts relating to the "manner" in which King spoke are disputed. Those facts are critical because they dictate whether King's speech "actively" or "physically" interfered with Ambs's investigation and, thus, whether it is constitutionally protected.

### A.    **Legal Standard.**

The majority correctly identifies the analytical framework for a qualified immunity analysis. It simply applies the defense too broadly, and at the expense of expansive First Amendment protections. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Causey v. Bay City*, 442 F.3d 524, 528 (6th Cir. 2006) (citations omitted).

Typically, the analysis has two steps. First, the Court determines whether, "*taken in the light most favorable to the party asserting the injury* . . . the facts alleged show [that Ambs's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (emphasis added); *see also Bukowksi v. City of Akron*, 326 F.3d 702, 708 (6th Cir. 2003). Second, assuming the "favorably

viewed" facts support the view that a constitutional violation occurred, the Court then determines whether the right at issue was "clearly established." *Saucier,* 533 U.S. at 202.[5] "The relevant, dispositive inquiry in determining whether a right is clearly established, is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Id*. (emphasis added). In this regard, viewing the facts in a light most favorable to King is critical because it is that perspective from which the Court is to make its reasonableness determination.[6] A public official is immune from liability only if the right at issue is not "clearly established."

## B.     Viewing The Facts In A Light Most Favorable To King, First And Fourth Amendment Violations Likely Occurred.

The fundamental issue presented is whether, or to what extent, the First Amendment protects the speech of a party who, during a police officer's conversation with an interviewee (*i.e*., an investigation), interjects comments advising the interviewee that he does not have to speak to the officer.[7] The majority agrees that such speech is protected until it rises to the level of a "physical obstruction" to the investigation. *Hill*, 482 U.S. at 463 . The details of any such encounter, therefore, are crucial. While the majority acknowledges this rule of law, it finds that King's speech amounted to a "physical obstruction" *based on Ambs's contested version of the facts*. The facts regarding the *manner* in which King "spoke," however, *are* disputed.

The district court found that King "persisted in speaking over" Ambs and effectively "[prevented Ambs] from conducting his investigation." JA 128-129. Despite King's evidence to the contrary, the court determined that King engaged in "active interference" that was tantamount to a "physical interruption" of Ambs's investigation. JA 127. In doing so, the district court accepted Ambs's version of the facts – specifically, the nature and timing of King's statements. Despite its comment that the "only real difference between [King's] and [Ambs'] testimony is [King's] contention that he never spoke over [Ambs]," the district court *found* that King "persisted in speaking over" Ambs, and premised its conclusions on that finding. JA 128, 130.[8]

Similarly, the majority accepts as "undisputed" the district court's description of the facts. For example, it repeatedly characterizes King's speech as disruptive, as described by Ambs:

> "King was arrested for disorderly conduct *because he obstructed* Officer Ambs's questioning of Klein in the course of a criminal investigation."

> "King . . . was arrested after *repeatedly interrupting* an officer who was questioning a third party."

---

[5] This Court occasionally performs a third step which asks "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established right." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004); *see also Swiecicki v. Delgado*, 463 F.3d 489, 497-98 (6th Cir. 2006). "Both the two-step approach and the three-step approach can be said to capture the holding of [*Saucier*]." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005). Under either approach, an appropriate construction of the facts requires reversal of the qualified immunity judgment entered in this case.

[6] Likewise, in connection with conventional summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[7] It is ironic that the *content* of King's speech was to communicate repeatedly to a friend that the friend had a constitutional right to keep quiet.

[8] To the extent the district court acknowledged a factual dispute, it determined the dispute to be immaterial because King was "warned several times that he would be arrested if he continued to interject himself in [] Ambs' attempt to question Klein." While King does not dispute that a warning was given, he understandably argues that a warning (or order) to stop engaging in First Amendment activity is invalid. *Swiecicki,* 463 F.3d at 498 ("An officer may not base his probable-cause determination on speech protected by the First Amendment."). Yet, the district court used Ambs's warning to nullify the materiality of the disputed facts. JA 130.

> "King offers no evidence to suggest that Officer Ambs was motivated by the content of King's statement rather than *the fact* of the *repeated obstruction.*"

> "The undisputed facts of this case are that King *repeatedly interfered* with an ongoing criminal investigation."

(Emphasis added). These statements are troubling given the majority's acknowledgment of King's contrary evidence:

> Officer Ambs testified that both King and Anderson "would speak over" him. King claims that "he was not speaking over Officer Ambs and was in no way interfering, physically or verbally, with Officer Amb's [sic] attempt to speak with Mr. Klein."

Though it appears to recognize the conflict, the majority disregards the conflict's critical impact on the analysis.

While King admits that he told his friend several times "not to speak" to Ambs, once even after Ambs threatened to arrest him if he "said one more word," he has presented evidence that he did not speak over Ambs, or otherwise interfere, physically or verbally, with Ambs's attempts to conduct the then-ongoing interview. JA 109. Essentially, King's version of the encounter is that he lawfully interjected himself into the ongoing investigation (with what he says were three short comments to a friend), but not to the point of becoming a "physical" obstruction to it. King explains that his comments were made from somewhat of a distance, and that he never positioned himself between Klein (his friend) and Ambs. Importantly, King explains that his final shot at convincing Klein not to speak to Ambs occurred as Klein, apparently having rejected King's advice, was stepping outside to speak with Ambs and closing King inside the house. Had the door closed (literally a moment later), King would have been left inside the house, *physically separated from Ambs and Klein by a closed door.* Rather than simply letting the door close, thereby eliminating King's alleged interference and admittedly obnoxious verbalizations (the claimed purpose for the arrest), King asserts that Ambs forcibly stopped the door from closing, grabbed King by reaching through the doorway, entered the house and ultimately arrested King.

In addition to the impact King's version of the facts has on the "physical obstruction" inquiry, it calls into question the majority's belief that there is no evidence to suggest that Ambs was motivated by the content of King's speech.[9] If King's "act of speaking" truly was the motive behind Ambs's actions, as the majority concludes, it is more likely that Ambs would have simply let the door close, which necessarily would have removed King from the equation, and continued with his investigation. Rather, under King's sworn version of the events, Ambs's decision to arrest King suggests that Ambs *may* have been motivated by what King was saying, rather than the mere fact that King was speaking.[10] Add to this the fact that King was advising Klein not to talk to Ambs, a jury easily could conclude that Ambs reacted to the *content* of King's speech, rather than the *manner* in which it was delivered.

---

[9] The majority attempts to distinguish *Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002), and *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007), cases in which this Court denied qualified immunity, by claiming that there is no evidence here that Ambs's decision to arrest was motivated by the content of King's speech. In both cases, this Court concluded that such evidence prevented summary judgment.

[10] Similarly, one could reasonably conclude that Ambs arrested King simply because King disobeyed Ambs's command to keep quite. Disobeying an order to stop exercising a constitutional right, however, cannot serve as probable cause for an arrest. *Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006) ("An officer may not base his probable-cause determination on speech protected by the First Amendment.").

Because the First Amendment's broad protections fall away *only* when speech of this type rises to the level of "physically obstructing" the ongoing police investigation, the Court can only reach a meaningful determination in that regard *as a matter of law* if the circumstances surrounding the questioned speech are undisputed.[11] The majority, however, embraces Ambs's version of certain of the facts, and, while ignoring undisputed points that undercut that version, concludes: "Because of the time and manner of King's repeated exhortations . . . his statements were not constitutionally protected." The *time and manner* of King's comments, however, are clearly disputed.

The majority ignores the fundamental procedural requirement that the Court view the facts in a light most favorable to King.[12] *See Enlow,* 962 F.2d at 509 (citing the Supreme Court's recognition in *Hill* of broad First Amendment protections, and concluding that qualified immunity is inappropriate when material facts are in dispute and the facts, as presented by the Plaintiff, support a claim that a constitutional violation occurred). This flaw is fatal to the majority's conclusions that no First or Fourth Amendment violations occurred because it is reasonably clear that, if proven, King's version of the encounter would support a contrary finding.

### C.        Ambs's Version Is Contrary To The Majority's Factual Conclusions.

Even viewing the facts in a light most favorable to Ambs should give the majority pause, moreover. That is because, Ambs's version arguably cannot support the district court's (or the majority's) factual findings. First, Ambs expressly testified that King never "physically interfered" with his investigation. JA 41. This alone is telling, and completely ignored by the majority. Second, and perhaps most relevant to a proper characterization of the purported "obstructive" nature of King's speech, is the fact that, just prior to his arrest, King was about to be *physically isolated* from Ambs and the subject of Ambs's inquiries (*i.e.*, Klein). This is true even under Ambs's version of the events. While there *may* be a dispute as to whether Klein was in the process of shutting the door to the house as King made his final comment – because the record is not clear on that point – *all* parties agree that when the final comment was made, King was inside the house, behind a door that was at least partially closed, and that Klein and Ambs were outside the house in a glass vestibule. The parties also agree that, at that point, King was not standing between Ambs and Klein; he was on his own inside the house.

Of note, moreover, Ambs's deposition testimony is far more descriptive with regard to the "manner" in which King spoke than is the report he prepared shortly after the arrest. For example, while Ambs testified that King disrupted the investigation by interrupting him, and "speaking over" him as he attempted to interview Klein, his initial police report (in which he details the events at issue almost immediately after they occurred) paints a much less obstructive picture. JA 48-51. Nowhere in his report does Ambs even suggest that King "spoke over" him, continually interrupted him, or that King's comments amounted to anything other than intermittent, and apparently obnoxious, advice to his friend. Though Ambs does record that he threatened to arrest King if King did not stop talking, he describes nothing other than just that – talking. The report does not describe an overly disruptive verbal encounter, certainly not one that would amount to a "physical obstruction" of the investigation. Ambs's own accounts, therefore, are less than uniform.

Even Ambs's version, therefore, shows that King posed, at best, a moderate (and easily excisable) impediment to Ambs's interactions with Klein. It simply cannot be the case that the public's broadly-established right to challenge police conduct can be so quickly set aside because

---

[11] As noted *supra*, if the "favorably viewed" evidence (*i.e.*, in King's favor) does not support the conclusion that a violation occurred, then the dispute is immaterial.

[12] Such blind acceptance violates both the conventional summary judgment standard (per Rule 56) and the qualified immunity summary judgment standard outlined in *Saucier v. Katz*, 533 U.S. 194 (2001).

an officer claims *after-the-fact* that the verbal challenges in question became overly disruptive. This is particularly true when: (1) the officer has provided multiple accounts of the events that are arguably distinguishable; (2) there is testimony contradicting the officer's claim that speech was "physically disruptive" (both in terms of the time and manner of the speech and the relative locations of those involved); and (3) there is evidence from which a jury could reasonably conclude that the resulting arrest was motivated by the content of the speech.

### D.          Ambs's Version Does Not Support The Majority's Legal Conclusions.

Even assuming that King *did* repeatedly "speak over" – or otherwise "interrupt" – Ambs with the three comments that Ambs found objectionable, given the *actual* undisputed circumstances of the encounter, it is unlikely that King's comments presented a "physical obstruction" to Ambs's performance of his duties in any event. As outlined above, this standard must be applied on a case-by-case basis, and in light of the well-settled principle that disruptive, obnoxious, frustrating and even overtly rude comments to a police officer usually are protected because officers are expected to exercise a higher degree of restraint. *Hill*, 482 U.S. at 462.

In light of *Hill*, courts considering speech-related interferences far more disruptive, disrespectful and confrontational than those presented here have found the speech at issue to be protected. For example, in *McCurdy,* this Court concluded that the plaintiff had a First Amendment right verbally to challenge (and essentially to disrupt) a police officer's surveillance of him and his friends, even though his challenge included repeatedly cursing at the officer and refusing to provide identification or to obey the officer's order that he "return to his home." 240 F.3d 512, 520. Similarly, in *Enlow*, the court concluded that the plaintiff's repeated inquiries as to whether officers had search or arrest warrants, and his photographing of the officers as they executed their search, enjoyed First Amendment protection because those activities, despite their disruptive effect on the officer's activities, did not rise to the level of unrest, or constitute an incitement to immediate lawless action. 962 F.2d 501, 509. Indeed, the Court in *Hill* referenced the incredibly confrontational speech in *Lewis v. City of New Orleans*, 415 U.S. 130 (1974), as an example of "provocative," but protected, speech. Recall, *Lewis* involved a plaintiff yelling obscenities and threats at an officer who was attempting to obtain a driver's license from the plaintiff's husband. *Hill*, 482 U.S. at 461.

Careful comparison of the facts in these, and other, cases with those at issue here (even under the majority's view of them), leads to the conclusion that King's speech simply was not physically obstructive within the meaning of established First Amendment jurisprudence. Should doubt remain on this issue, *Hill's* own "examples" of physically obstructive speech seem to resolve it. In *Hill*, the Court addresses two hypotheticals in which speech *could qualify* as "physically obstructive," and, therefore, be prohibited *via* a narrowly-tailored ordinance.[13] The first example involves a person who stands near a police officer and persistently attempts to engage *the officer* in conversation while the officer is *directing traffic at a busy intersection*. *Id*. at 463 n. 11. The second example involves a person who runs alongside an officer who is *pursuing a felon* in a public street and continuously shouts *at the officer*. *Id*. Under these circumstances, the Court concluded that the speech may not enjoy First Amendment protection.

---

[13]The plaintiff in *Hill* was arrested for shouting at officers so as to divert their attention away from their efforts to solicit identification from the plaintiff's friend. *Hill*, 482 U.S. at 454. Of note, when discussing the "physical obstruction" standard in light of Justice Powell's hypothetical(s), the Court did not condemn the plaintiff's underlying speech, the admitted purpose for which was to impede a police investigation. While not dispositive, this certainly suggests that the underlying speech in *Hill* would not qualify as "physically obstructive." Setting aside that there is no evidence that King's intention was to distract Ambs, rather than to dissuade Klein, this is obviously significant because King's speech similarly can be characterized as merely interruptive.

Clearly, these examples are materially distinguishable from even Ambs's version of the facts, which is essentially that King made three interruptive comments to a friend, the last of which was made from inside the house and behind a partially closed (or closing) door. Unlike the *Hill* examples, Ambs was not engaged in a potentially dangerous police activity like directing busy traffic or pursuing a felon. He was engaged in a non-contentious conversation with an apparently willing participant. Nor was Ambs faced with only one option for eliminating King's purported interference – *i.e.*, arresting him. Unlike the officers in the *Hill* examples, Ambs could have removed King from the equation by closing the door to the house or asking Klein to provide a more private setting for their conversation. Lastly, King's comments were not directed to Ambs, they were directed to Klein. In part, the *Hill* examples suggest that speech becomes "obstructive" when it diverts the officer's attention away from what he is doing, thereby risking the safety and efficacy of the officer's efforts, as opposed to merely interrupting the officer's efforts to communicate with a third party. At most, King's comments (as described by Ambs) amounted to intermittent verbal distractions to a non-contentions (relatively speaking) oral investigation, which could have been eliminated short of a dramatic arrest (pepper spray and all).

### E.      The Constitutional Rights At Issue Were Clearly Established And, Viewing The Evidence In A Light Most Favorable To King, Ambs Should Have Known That Arresting King Would Violate Those Rights.

For the reasons outlined at the outset of this dissent, there should be little doubt that the constitutional rights at issue here are "clearly established." That notwithstanding, the majority's resolution of this part of the qualified immunity analysis warrants brief additional attention. As noted, the First and Fourth Amendment issues in this case are intertwined and must be analyzed in conjunction with one another; they cannot be considered piecemeal.

As to the Fourth Amendment, the critical inquiry is whether Ambs should have known that, under the facts and circumstances of this case *as presented by King*, probable cause did not exist for King's arrest. The majority limits its probable cause inquiry to whether "the . . . *Vasquez* holding [applies] to the ordinance and facts of this case." As the majority explains, in *People v. Vasquez*, 631 N.W.2d 711 (Mich. 2001), the Michigan Supreme Court addressed whether a different state obstruction statute required "physical interference" before an officer could arrest for obstruction. The *Vasquez* court concluded that physical interference was required under the statute at issue in that case.

Assuming *Vasquez* were to apply here,[14] which is the sole basis for the majority's *assumption* that a criminal violation occurred, the majority resolves the second prong of the Fourth Amendment qualified immunity analysis as follows:

> Because *Vasquez* interpreted a statute other than the local ordinance on which Officer Ambs relied and considered facts that were very different than those actually confronted by Officer Ambs, *Vasquez* could not have clearly established that Officer Ambs's conduct in arresting King was without probable cause.

In other words, the majority takes the narrow view that Ambs reasonably should not have known about *Vasquez* because it interpreted a different statute; ergo, the Fourth Amendment right at issue was not clearly established.

Because King's alleged "interference" was only verbal, however, *Vasquez's* applicability here is not the critical inquiry – and certainly it is not the *sole* inquiry. "An officer may not base his probable-cause determination on speech protected by the First Amendment." *Swiecicki v. Delgado*,

---

[14] According to the majority, a Fourth Amendment violation would have occurred here only if the "physical interference" requirement from *Vasquez* applied to the local ordinance under which Ambs purportedly arrested King.

463 F.3d 489, 498 (6th Cir. 2006). Given the First Amendment implications here, the proper inquiry is whether Ambs should have known about the applicable First Amendment standard that, like *Vasquez* (only far more "established"), absolutely prevents probable cause for an arrest unless the subject speech amounts to a "physical obstruction." *Hill*, 482 U.S. at 463. Whether Ambs should have known about *Vasquez* (whether or not it applies), therefore, is beside the point given the greater First Amendment implications *presented in this case*. In this regard, the Fourth Amendment qualified immunity analysis collapses into that of the First Amendment because, in the context of this case, the probable cause determination turns on whether King was engaged in protected speech. Whether the First Amendment right at issue was "clearly established," therefore, is dispositive of the Fourth Amendment inquiry as well.

As to the First Amendment right, the majority provides only a single-sentence alternative holding relative to the second prong of the qualified immunity analysis. It states:

> Because a reasonable officer would not have known that enforcement of the Columbia Township obstruction ordinance *in the context of this case* violated the First Amendment, the right was not clearly established and Officer Ambs would be entitled to qualified immunity. . . .

(Emphasis added). Because it primarily rests its decision on the conclusion that no constitutional violations occurred, the majority provides no analysis in support of the above conclusion. Put simply, the majority concludes that the First Amendment right was not clearly established because no protected First Amendment conduct occurred. Putting aside its circularity, the ultimate conclusion that the right at issue here was not clearly established can not be squared with the state of the law when the arrest occurred.

At least twenty years ago, the Supreme Court made clear that, within reason, individuals may not be subject to arrest merely because they interrupt or challenge police conduct. *Houston v. Hill*, 482 U.S. 451, 463 (1987); *see also McCurdy v. Montgomery County, Ohio*, 240 F.3d 512, 520 (6th Cir. 2001). "[T]he First Amendment protects *a significant amount* of verbal criticism and challenge directed at police officers." 482 U.S. at 461 (emphasis added). Despite any statute or ordinance authorizing a different standard, as in *Hill*, until speech rises to the level of a "physical obstruction" to an ongoing investigation, it remains protected.[15] *Id*. This principle is well-established.

The majority does not disagree with this well-settled precedent, it simply concludes that, in this context, Ambs reasonably should not have known that arresting King would run afoul of it. As noted, however, the "context" upon which the majority relies embraces Ambs's version of the facts (and arguably embraces one that is even more favorable to Ambs than his own description of those facts). To the contrary, I believe a reasonable officer should have known that, for twenty years, the law has been that, regardless of a statute or ordinance to the contrary, the First Amendment protects "interruptive" speech in this context.[16] *Id.* at 463.

The majority's decision today provides a broad shield to police officers who seek to enforce

---

[15] *Hill* clarified this principle within the context of a citizen's disruption of a police investigation, and that citizen's subsequent arrest for violation of a city ordinance that prohibited *all manner* of interference. While *Hill* specifically involved only a constitutional challenge to the ordinance, it no doubt established, or otherwise affirmed, the governing principles relative to when confrontational speech loses First Amendment protection during interactions with police officers.

[16] Alternatively, qualified immunity is inappropriate here because the disputed issues of fact impact the Court's ability to assess the "reasonableness" of Ambs's conduct *vis-a-vis* the "clearly established" prong of the qualified immunity analysis. *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) ("[w]here the reasonableness of an officer's actions hinge on disputed issues of fact, 'the jury becomes the final arbiter of . . . immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury.'").

obstruction statutes against those engaged in speech-related challenges to police activity.  It simply cannot be squared, however, with well-established, and, indeed, important First Amendment jurisprudence.

## III.    *Conclusion*.

Accordingly, I cannot agree with the majority's conclusions that:  (1) *as a matter of law*, no constitutional violations occurred; and (2) even if violations occurred, the constitutional rights that were violated were not clearly established.  The majority improperly minimizes the broad protections that apply in this context, and rests its conclusions on a procedurally-flawed view of the facts and evidence in the record.  Viewed in a light most favorable to King, the record supports the conclusion that established First and Fourth Amendment rights may have been violated.  I do not like or approve of what King did.  I believe, however, that there are important reasons why we must tolerate it.[17]  I would reverse the trial court's grant of summary judgment in favor of Ambs on qualified immunity grounds.

---

[17]As Mr. Justice Holmes opined when addressing a citizen's right to hold unpopular beliefs without fear of retaliation, "if there is any principle of the Constitution that more imperatively calls for attachment than any other it is the principle of free thought – not free thought for those who agree with us *but freedom for the thought that we hate*." *United States v. Schwimmer*, 279 U.S. 644, 654-55 (1929) (Holmes, J., dissenting) (emphasis added).  Such is also the case with speech that is unpopular, disrespectful and, to some extent, disruptive.