*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0284p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

JUDI PATRIZI,

*Plaintiff-Appellee,*

*v.*

No. 11-4168

SCOTT W. HUFF, THOMAS W. CONNOLE,
            *Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:09-cv-2830—Lesley Brooks Wells, District Judge.

Argued: July 20, 2012

Decided and Filed:  August 24, 2012

Before:  MOORE, WHITE, and LUCERO,[*] Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Gary S. Singletary, CITY OF CLEVELAND, Cleveland, Ohio, for
Appellants.  Alphonse A. Gerhardstein, GERHARDSTEIN & BRANCH CO. LPA,
Cincinnati, Ohio, for Appellee.  **ON BRIEF:** Gary S. Singletary, CITY OF
CLEVELAND, Cleveland, Ohio, for Appellants.  Alphonse A. Gerhardstein,
GERHARDSTEIN & BRANCH CO. LPA, Cincinnati, Ohio, for Appellee.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.  Judi Patrizi ("Patrizi") initiated suit

against Cleveland police officers Scott Huff ("Huff") and Thomas Connole ("Connole")

pursuant to 42 U.S.C. § 1983 alleging that they arrested her for obstructing official

_____
[*]The Honorable Carlos F. Lucero, Circuit Judge for the United States Court of Appeals for the
Tenth Circuit, sitting by designation.

business in violation of Cleveland Ordinance § 615.06(A) without probable cause in violation of the Fourth and Fourteenth Amendments. Huff and Connole appeal the denial of their motion for summary judgment on qualified-immunity grounds arguing that they did have probable cause to arrest Patrizi or, in the alternative, the fact that they lacked probable cause to initiate the arrest was not clearly established. Because, construing the facts in the light most favorable to Patrizi, the law was clearly established that Huff and Connole lacked probable cause to arrest Patrizi, we **AFFIRM** the district court's denial of summary judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. Background

In December 2007, Patrizi, a licensed attorney, was at Bounce nightclub in Cleveland with her friend Molly Baron ("Baron"), Baron's brother, and his girlfriend, Brandi Mills ("Mills"). R. 33 (Patrizi Dep. at 16:11-14, 17:23-18:3, 19:7-19, 21:1-6). Officers Huff and Connole came to Bounce in the early morning hours in response to a reported assault. R. 31 (Huff Dep. at 50:4-6). They met the victim reporting the incident, Heather Wallace ("Wallace"), outside and she led them inside the nightclub to identify the group of perpetrators. *Id.* at 51:12-25. The officers escorted the group, which included Mills, toward the exit of the club where the music was quieter to investigate. *Id.* at 52:2-3. Patrizi, who was standing at the bar nearby joined the group after making eye contact with Mills. R. 33 (Patrizi Dep. at 38:17, 40:10-22, 43:2-6).

The parties do not dispute that Connole began to question Mills and that Patrizi interjected during the course of the questioning. They also do not dispute that, eventually, Patrizi was handcuffed and placed under arrest. However, the parties give significantly different accounts of the sequence of events leading up to Patrizi's arrest.

In a written police report from the night of the incident, Huff stated[1] that Patrizi "approached and began giving commands to" Mills and eventually "pointed right into

---

[1]Huff testified that he wrote the report based largely on Connole's recitation of the night's events to him. R. 31 (Huff Dep. at 71:11-14).

[officer] Connole's face and stated 'she doesn't have to say anything to you.'" R. 35-2 (Written Police Rpt.). The report further states that Patrizi continuously interjected such that Connole "could not get a word in edgewise" and that Patrizi "continued [to] point her finger in his face (on[ly] a few inches away) stating things like 'she doesn't have to answer to you' and 'you have no right to question her[,]' 'what are you charging her with[,]' 'I'm a defense attorney representing her.'" *Id.* Huff stated in the report that when he intervened to quiet Patrizi and ask her to go outside, Patrizi "pulled away . . . and said 'I don't have to leave'" and then "swung her arm around at [him] . . . and said 'I don't have to go anywhere.'" *Id.* The report states that at this point Patrizi was placed under arrest. *Id.*[2]

Huff and Connole clarified this version of the events in their deposition testimony. Huff maintained that he was not involved with questioning the group and only became involved once Connole signaled to him that Patrizi needed to be removed from the scene. R. 31 (Huff Dep. at 60:9-21). At first, Huff testified that he was unsure whether he arrested Patrizi on his partner's direction inside the club, *id.* at 61:23-24, but later stated that he arrested Patrizi after they exited the club in light of the conduct she engaged in outside the club, *id.* at 67:8-68:21. In particular, Huff stated that Patrizi swung her arm at him only when they were outside the club. *Id.* at 79:16-22. Both officers testified that Patrizi appeared to be intoxicated. *Id.* at 86:22; R. 32 (Connole Dep. at 16:16). Connole testified that he did not recall whether Patrizi raised her voice, but stated that she asked him questions including whether Mills was a suspect, why he was conducting the questioning, and whether he was imposing any charges.

---

[2]A surveillance video from the nightclub of these events was submitted into evidence. *See* R. 4 (Surveillance Video). The district court concluded that the video contradicted the police report in significant respects because the video showed "no evidence . . . of Ms. Patrizi pointing her finger in Officer Connole's face," "of Ms. Patrizi pulling away from Officer Huff after he seized her," "of Ms. Patrizi swinging her arm at Officer Huff," or "of Ms. Patrizi stiffening her walk, or otherwise resisting while Huff walks her out the door." R. 45 (Dist. Ct. Op. at 7). Connole seemed to admit these inconsistencies in his deposition. *See* R. 32 (Connole Dep. at 37:20-39:7). Huff suggested that the inconsistencies could be due to time delays in the surveillance video recording as well as the fact that Patrizi engaged in some of the conduct described in the report after she had already been escorted out of the club. *See* R. 31 (Huff Dep. at 85:9-86:17, 90:2-93:11). We have reviewed the video and agree with the district court that, in certain respects, it contradicts the facts stated in the police report.

R. 32 (Connole Dep. at 18:4-19:4). Connole also confirmed that Patrizi identified herself as an attorney. *Id.* at 19:8.

Patrizi stated in her deposition that when she approached the group Connole was "just doing his job asking questions of Brandi [Mills]." R. 33 (Patrizi Dep. at 45:17-18). Patrizi stated that when she "started to understand why [Connole] was asking [Mills] questions" she intervened to ask if Mills was a suspect in the investigation, identifying herself as a lawyer. *Id.* at 46:6-7, 46:15-47:11, 48:1-3. Later on, Patrizi inquired as to whether Mills was in custody, reminding Connole that in such a circumstance Mills was entitled to be read her rights. *Id.* at 50:3-11. Patrizi testified that she did not tell the officer that Mills did not have to say anything to him, and that the officer never instructed Patrizi to cease interjecting in the investigation. *Id.* at 48:4-10. Patrizi stated that, shortly after she inquired as to whether Mills was in custody, Patrizi was handcuffed, placed under arrest, and escorted out of the club. *Id.* at 52:12-24, 53:17-20.

## B. Procedural History

Patrizi was charged with obstructing official business in violation of Cleveland City Ordinance § 615.06(A), but the charges were later dismissed. *Id.* at 58:4-7, 60:4-5. On December 4, 2009, Patrizi filed a complaint asserting claims under 42 U.S.C. § 1983 as well as state-law claims for false arrest and malicious prosecution.[3] R. 1 (Compl.). Huff and Connole moved for summary judgment, asserting the defense of qualified immunity. R. 30 (Summary Judgment Mot.). The motion was referred to a magistrate judge, who issued a recommendation to deny the motion. R. 42 (Magistrate Report & Rec.). The district court adopted the magistrate judge's recommendation and denied summary judgment, concluding that Patrizi's speech never constituted an affirmative act of obstruction under the ordinance. R. 45 (Dist. Ct. Op. at 12). Huff and Connole timely filed an interlocutory appeal. R. 48 (Notice of Appeal).

---

[3]These state-law claims were voluntarily dismissed. *See* R. 12 (Dismissal Stipulation).

## II. ANALYSIS

### A. Standard of Review

"We review the denial of summary judgment on grounds of qualified immunity *de novo* because application of this doctrine is a question of law. But to the extent that there is disagreement about the facts, we must review the evidence in the light most favorable to the Plaintiff, taking all inferences in [her] favor." *Kennedy v. City of Villa Hills*, 635 F.3d 210, 213 (6th Cir. 2011) (internal quotation marks and alterations omitted). The Supreme Court has set out "a two-step sequence for resolving government officials' qualified immunity claims" and we may consider the steps in any order. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). Thus, we "must decide whether the facts that [the] plaintiff has alleged or shown make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of defendant[s'] alleged misconduct." *Id.* at 232 (internal citations omitted).

### B. Qualified Immunity

Patrizi alleges that Huff and Connole arrested her for obstructing official business under Cleveland City Ordinance § 615.06(A) without probable cause in violation of the Fourth and Fourteenth Amendments. "It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment." *Ingram v. City of Columbus*, 185 F.3d 579, 592-93 (6th Cir. 1999). "To determine whether officers had probable cause to arrest an individual, we must look to the law of the jurisdiction at the time of the occurrence." *Id.* at 594. Accordingly, we look to whether it was clearly established that Huff and Connole lacked probable cause to arrest Patrizi for violating Cleveland City Ordinance § 615.06(A). *See Lyons v. Xenia*, 417 F.3d 565, 573 (6th Cir. 2005).

Cleveland City Ordinance § 615.06(A) states:

No person, without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of any authorized

act within his or her official capacity, shall do any act which hampers or impedes a public official in performance of his or her lawful duties.

*See also City of Cleveland v. Kristoff*, No. 80086, 2002 WL 441584, at *1 (Ohio Ct. App. Mar. 21, 2002) (unpublished opinion) (quoting Ordinance).  The ordinance is substantially identical to Ohio Rev. Code § 2921.31(A) and, accordingly, state law interpreting the Ohio code is relevant to interpretation of Cleveland City Ordinance § 615.06.  *See Kristoff*, 2002 WL 441584, at *1-*2.  "A conviction under [Ohio Rev. Code § 2921.31(A)] requires (1) the performance of an unprivileged act (2) with the purpose of preventing, obstructing or delaying the performance by a public official of an authorized act within his official capacity (3) which hampers or impedes the public official in the performance of his lawful duties."  *Lyons*, 417 F.3d at 573 (citing *City of N. Ridgeville v. Reichbaum*, 677 N.E. 2d 1245, 1248 (Ohio Ct. App. 1996)).  We consider only the first two elements of this three-part test because in this instance they are dispositive.

**1.  Performance of an Unprivileged Act**

This court has previously recognized that the act requirement of the obstruction statute "demands an affirmative act that interrupts police business."  *Id.* (citing *City of Hamilton v. Hamm*, 514 N.E. 2d 942, 943-44 (Ohio Ct. App. 1986)).  "[T]ruthful speech can satisfy the act element of the statute if it was done for the purpose of impeding an officer in the performance of his or her duty."  *State v. Wellman*, 879 N.E.2d 215, 219 (Ohio Ct. App. 2007).

To date, Ohio courts have affirmed obstruction convictions premised on true speech only when that speech involved yelling, cursing, aggressive conduct, and/or persistent disruptions after warnings from the police against interrupting the investigation.  *See id.* at 218 ("He actively prevented [the officers] from talking to the individual . . . not just by asking questions, but by being belligerent and argumentative.");  *State v. Grooms*, No. 03AP-1244, 2005 WL 407573, at *6 (Ohio Ct. App. Feb. 22, 2005) ("[A]ppellant's repeated harassment and yelling, six inches from Officer Silverman's face, impeded his ability to complete the paperwork relative to the

arrest of Grooms."); *City of N. Ridgeville*, 677 N.E. 2d at 1248-49 (concluding that defendant's multiple acts of interference despite being advised of the reason for the officers' presence and instructed not to impede their investigation provided a sufficient basis to uphold the obstruction conviction). We previously recognized this feature of Ohio law in listing the conduct that Ohio courts have held satisfies the affirmative-act requirement: "hostile or abusive speech that obstructs officers from fulfilling their duties," speaking with "volume and demeanor . . . [that] make it impossible for the police to question another individual," and an " overall pattern of behavior . . . of resistance." *Lyons*, 417 F.3d at 574.[4]

A 2002 Ohio Court of Appeals case affirms that at the time of Patrizi's arrest it was clearly established law that Patrizi's conduct did not constitute an affirmative act under the obstruction ordinance. In *Kristoff*, the Ohio Court of Appeals held that the police lacked probable cause to arrest an individual for obstructing official business where that individual merely advised his friend being questioned by plain-clothes detectives to request identification from the detectives before answering their questions. 2002 WL 441584, at *1. The court in *Kristoff* reasoned that although "[t]he Supreme Court of Ohio has not determined whether true statements made to police officers in the course of conducting official business constitute conduct as contemplated by the statute . . . courts have affirmed convictions for obstruction of official business only when the manner and context of the boisterous statement prevented a public official from carrying out his or her lawful duty." *Id.* The court concluded that Kristoff's conduct did not fall into this category because although his "comments may have disturbed the detectives insofar as their investigation was in abeyance while the detectives turned to Kristoff to warn him about interfering," there was "no evidence" that the statements "were spoken so boisterously and in such a manner as to prevent the detectives from carrying out their duties." *Id.* at *2. Other Ohio jurisprudence affirms that *Kristoff* is an accurate

---

[4]Huff and Connole argue that this Court's decision in *King v. Ambs*, 519 F.3d 607 (6th Cir. 2008), is relevant and important to the present analysis. However, *King* involved a Michigan obstruction statute, not the Ohio statute at issue here. Moreover, the facts in *King* are distinguishable from the present case as King repeatedly interrupted the police's conversation despite the officer's repeated warnings to cease engaging in such disruptive conduct. *See id.* at 609.

statement of Ohio law.  *See Pullin v. City of Canton*, 133 F. Supp. 2d 1045, 1052 (N.D. Ohio 2001) (upholding denial of summary judgment on qualified immunity grounds where Pullin approached the traffic stop only to offer assistance to the individual involved and began to leave the scene when instructed to do so by the police); *Burr v. Perkins*, No. 2:04-cv-786, 2006 WL 2165701, at \*6 (S.D. Ohio July 31, 2006) (unpublished opinion) (concluding that under clearly established law Burr's interruption of the police investigation did not amount to obstruction where Burr approached only to help facilitate the conversation and backed away when instructed to do so by the police); *State v. Herron*, No. 23868, 2011 WL 281130, at \*6 (Ohio Ct. App. Jan. 14, 2011) (unpublished opinion) ("[T]he problem was not the content of Herron's remarks, but the volume and intensity with which they were persistently uttered, after Herron was warned, which interfered with Officer Benge's concentration on her tasks.").

Construing the facts in Patrizi's favor, we conclude it is clear that Patrizi's actions did not constitute an affirmative act under the obstruction ordinance.  Patrizi asked the officer questions in a calm and measured manner; she did not continuously interrupt so that the officer could not speak to the subjects of his investigations.  She did not ignore instructions from him to cease her questioning—in fact, she was never even given such instructions—and she did not in any way exhibit aggressive, boisterous, or unduly disruptive conduct.[5]  In short, it is evident that Patrizi's actions were of the same nature as those held not to constitute an affirmative act by the Ohio Court of Appeals in *Kristoff*.  Therefore, under clearly established law the officers lacked probable cause to arrest her.[6]

---

[5]Appellants seek to distinguish *Kristoff* on the grounds that the officers in *Kristoff* were in plain clothes, whereas officers Huff and Connole were in uniform and, therefore, clearly identifiable as police officers.  Appellant Br. at 24.  We see no reason why this impacts the analysis.

[6]In light of this conclusion, we need not consider whether Patrizi's acts would otherwise be considered privileged acts under the ordinance.  *See State v. Luke*, No. 09CA30, 2010 WL 3552092, at \*4 (Ohio Ct. App. Sept. 8, 2010) (unpublished opinion).

**2. Purpose of Preventing, Obstructing, or Delaying the Performance by a Public Official of an Authorized Act within His Official Capacity**

Although our conclusion as to the affirmative-act prong is sufficient to sustain the denial of summary judgment, we hold in the alternative that Patrizi clearly was not acting with the requisite purpose to obstruct the officers' investigation. At the time of Patrizi's arrest, Ohio courts had clearly established that "[w]here a defendant's conduct is limited to truthful speech, one cannot reasonably infer intent to obstruct official business unless the circumstantial evidence clearly demonstrates intent." *In re Payne*, No. C-040705, 2005 WL 2248870, at *3 (Ohio Ct. App. Sept. 16, 2005) (unpublished opinion). Ohio courts had found such circumstantial evidence lacking where an individual's conduct was "limited to arguing with the police officers," *id.*, as well as in circumstances where it was evident that the individual had other benign motivations, *see State v. Graham*, No. 2009 CA 81, 2009 WL 4893343, at *6 (Ohio Ct. App. Dec. 18, 2009) (unpublished opinion) (concluding there was insufficient evidence to support a conviction for obstructing official business where defendant's "actions in calling her attorney, the therapist, and others" did not evidence that defendant "acted *with the purpose* to prevent, obstruct or delay" the officers); *Gessner v. Schroeder*, No. 21498, 2007 WL 431421, at *9 (Ohio Ct. App. Feb. 9, 2007) (unpublished opinion) (reversing a grant of summary judgment in favor of the defendant where it was clear that Gessner's purpose was not to impede the officers' present investigation, but rather to inform the officers of the location of the victim of an attempted shooting). These decisions govern the outcome in this case because one cannot reasonably infer from Patrizi's actions that her purpose was to hamper or impede the officers' investigation. First, Patrizi's questioning of Connole was even less indicative of an intent to obstruct than arguing with a police officer was in *In re Payne*. *See* 2005 WL 2248870, at *3. Second, Patrizi's actions demonstrate that her purpose was to ensure the respect of Mills's constitutional rights in the context of the citizen-police encounter. This is clear from the manner in which Patrizi asked questions of Connole: a calm and measured manner and only upon suspecting that the investigation may be turning from a voluntary citizen-

police encounter into a custodial interrogation. As a result, under clearly established law, the officers lacked probable cause to believe that Patrizi was acting with the purpose of impeding their investigation of the alleged assault.

A final point is worth mentioning, although not explicitly raised by the parties. The Supreme Court has recognized First Amendment limitations on the conduct that state municipalities may outlaw with respect to interruption of police activity. In *City of Houston v. Hill*, 482 U.S. 451, 455 (1987), the Court held that a Houston ordinance that made it illegal to "oppose, molest, abuse or interrupt any policeman in the execution of his duty" was substantially overbroad and therefore unconstitutional. The Court explained that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers" and that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 461-63. Accordingly, the Court concluded that because the "Houston ordinance" was not "narrowly tailored to prohibit only disorderly conduct or fighting words" it impermissibly captured protected speech. *Id.* at 465. Although *Hill* is not directly relevant insofar as the present case does not concern a First Amendment challenge, *Hill*'s explanation of what conduct may and may not be criminalized must nevertheless inform this court's analysis. *See Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006) ("An officer may not base his probable-cause determination on speech protected by the First Amendment."). Thus, despite any arguable ambiguity in the Ohio state courts' jurisprudence, the U.S. Supreme Court has clearly established that nonaggressive questioning of police officers is constitutionally protected conduct.[7] Patrizi's actions fall precisely within that protected ambit because, when the facts are viewed in her favor, her

---

[7]Moreover, we note that the Supreme Court's recent decision in *Reichle v. Howards*, --- U.S. ---, 132 S. Ct. 2088 (June 4, 2012), does not affect our present analysis. In *Reichle*, the Court held that it was not clearly established law that an individual has a First Amendment "right to be free from a retaliatory arrest that is otherwise supported by probable cause." *Id.* at 2094. Thus, the case considered not the criminalization of otherwise protected speech, but the scope of the First Amendment right when retaliatory motivations may lead to an arrest that is independently justified in light of probable cause for an unchallenged offense.

conduct did not cross the line into fighting words or disorderly conduct prohibiting the officers from conducting their investigation.

### III.  CONCLUSION

Based on the foregoing, we **AFFIRM** the district court's denial of summary judgment on qualified-immunity grounds.