**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0462n.06

Case No. 18-4043

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Sep 03, 2019

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| DALE K. PHILLIPS, II, | ) |
| | ) |
|     Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| KAREN BLAIR, Individually and in her official capacity as a police officer for the City of Columbus; ADAM GROVES, Individually and in his official capacity as a police officer for the City of Columbus; JEAN BYRNE, Individually and in her official capacity as a police officer for the City of Columbus; DOUGLAS K. MCCLAIN, JR., Individually and in his official capacity as a police officer for the City of Columbus; CHAD CAZAN, Individually and in his official capacity as a police officer for the City of Columbus; LOWELL F. RECTOR, Individually and in his official capacity as a police sergeant for the City of Columbus; CITY OF COLUMBUS, OHIO, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| | ) |
|     Defendants-Appellants. | ) |

BEFORE: COOK, McKEAGUE, and WHITE, Circuit Judges.

COOK, Circuit Judge. In a classic case of finding oneself in the wrong place at the wrong time, Dale K. Phillips stopped his truck late at night outside a building that police believed three

suspects were in the process of burglarizing. After officers responding to the burglary detained Phillips, they forcefully removed him from his vehicle and eventually arrested him for obstructing their investigation. Following his acquittal in a criminal trial on the obstruction charge, Phillips brought this 42 U.S.C. § 1983 action against individual officers and the City of Columbus, alleging state law and First and Fourth Amendment violations. On a motion for partial summary judgment, the district court, save one exception, denied the officers qualified immunity and they now appeal that decision. For the reasons stated below, we REVERSE the district court's denial of qualified immunity on each of Phillips's claims, acknowledging that Officer Groves did not seek immunity with respect to the use-of-mace portion of Phillips's excessive force claim.

## I.

At nearly 11:00 p.m. on a late summer night in 2014, a caller reported to a 911 dispatcher that he witnessed three individuals—two white males and one black female—carrying items out of a shuttered bar and loading them into a vehicle. The caller noted that the woman wore an orange head wrap and one of the men wore a gray coat. Cruising less than a block away when she heard the dispatch, Officer Karen Blair responded. Blair testified that she observed Phillips's truck parked outside of the target building when she arrived, but Phillips maintains that his truck was in motion when he first saw Blair, and that the two nearly collided. Both accounts reflect that Blair then exited her police cruiser and approached Phillips's vehicle. Knowing the suspects reportedly loaded items into an unknown vehicle, and noting several general, if imprecise, consistencies between the suspected burglars and Phillips and his female passenger, Blair decided to question Phillips in his truck.

Phillips, himself a former state patrolman, resisted Blair's questioning. He initially avoided handing over his driver's license, surrendering it only after Blair told him about the burglary

investigation. Meanwhile, other officers began arriving on the scene. Officer Jean Byrne, the second officer to respond, approached the truck's passenger side, removed Phillips's female rider from the vehicle, and questioned her. Officer Adam Groves arrived next and assisted Blair in coaxing Phillips out of the truck. Around this time, Officers Chad Cazan and Douglas McClain pulled up in a prisoner transport van. As the officers escorted Phillips out of his truck, Groves grabbed Phillips's arm.

The narrative splits here. According to Phillips, Groves pulled on his arm and repeatedly commanded him to stop resisting before a group of officers—despite his attempts to comply— violently took him to the ground, cuffed him, and sprayed mace directly into his eyes. According to the officers, Phillips "tensed up" at Groves's touch, attempted to reenter the truck, and after struggling with the officers for several moments, was subdued using practiced police techniques. All agree that the officers then placed Phillips in a police cruiser to treat his eyes and question him.

After consulting with Sergeant Lowell Rector, who arrived following the scuffle, Blair charged Phillips with obstructing official business, arresting and jailing him for the night. *See* Columbus City Code § 2321.31. Following a successful appeal from a conviction on the obstruction charge, a second jury acquitted Phillips.

Phillips then brought this 42 U.S.C. § 1983 action against Officers Blair, Byrne, Groves, Cazan, McClain, Rector, and the City of Columbus for Fourth Amendment violations; against Blair, Rector, and the City of Columbus for malicious prosecution; and against Blair for First Amendment retaliation. The officers moved for partial summary judgment, asserting qualified immunity. The district court, except as to the excessive force claim against Byrne and the malicious prosecution claim against the city, denied the motion, and the individual officers filed this interlocutory appeal.

**II.**

We face the threshold question of our jurisdiction over the officers' interlocutory appeal. The "collateral order" doctrine provides for a public official's immediate appeal of an order denying qualified immunity "based on a pure issue of law." *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006). Excepting Phillips's unreasonable seizure claim, the district court denied qualified immunity on each issue because it found genuine disputes of material fact underlying the legal analysis. We may exercise jurisdiction over an appeal from a denial of qualified immunity even when the district court found genuine disputes "if the defendant does not dispute the facts alleged by the plaintiff for purposes of the appeal." *Bishop v. Hackel*, 636 F.3d 757, 764 (6th Cir. 2011); *see Pollard v. City of Columbus*, 780 F.3d 395, 401 (6th Cir. 2015). Because the officers—ostensibly, at least—do not dispute Phillips's factual evidence here, *see* Appellant Br. at 30, we entertain this appeal, *see Pollard*, 780 F.3d at 401; *Bishop*, 636 F.3d at 765; *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc).

**III.**

We review de novo a district court's denial of qualified immunity. *Pollard*, 780 F.3d at 402. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), shielding the discretionary actions of government officials so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis proceeds in two familiar steps, the first asking whether the plaintiff pointed to facts that make out a constitutional violation and the second asking whether existing precedent "clearly established" the right at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Qualified immunity

protects an official if the plaintiff fails to satisfy either step. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

## A.  Unreasonable seizure

The district court held that, drawing all inferences in favor of Phillips, the officers violated clearly established law by detaining Phillips in connection with the reported burglary and therefore denied them qualified immunity on the unreasonable seizure claim.  We see it differently.  Finding the officers' actions objectively reasonable, we reverse the district court on this issue and grant the officers qualified immunity.

The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.  Thus, warrantless seizures fail constitutional muster unless they qualify under one of several well-defined exceptions.  *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception, an investigatory detention or "*Terry* stop," allows authorities to detain a suspect when "specific and articulable facts which, taken together with rational inferences from those facts," *Terry v. Ohio*, 392 U.S. 1, 21 (1968), support a reasonable suspicion that the individual "has been or is about to be involved in criminal activity," *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993).  Though more than a "hunch," reasonable suspicion "is considerably less than proof of wrongdoing by a preponderance of the evidence."  *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000).  "Reviewing courts must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing," and bear in mind that officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative

information available to them." *United States v. Ellis*, 497 F.3d 606, 613 (6th Cir. 2007) (internal citation and quotations omitted).

The district court concluded that the officers failed to support their reasonable suspicion with specific facts tying Phillips to the suspected burglary. It noted inconsistencies between the dispatched descriptions of the suspects and Phillips and his passenger, including mismatches in race, dress, and location outside of the building. The police argue that Blair, the officer who initiated the detention, reasonably suspected Phillips's truck of involvement with the burglary because it was the lone vehicle outside of the target building and the informant stated that the suspects loaded items into an unknown vehicle.

Blair and Phillips tell two different versions of Blair's arrival on the scene. According to Blair, she crept her cruiser up an alley running behind the target building and observed Phillips's truck parked on the side of South Harris Avenue, near the building's side door. At Phillips's trial, for example, she testified: "When I got there, I saw a truck parked on the west side of the street facing northbound. . . . I saw a door directly next to where this truck was parked." R. 30-3, PageID 261. As Blair tells it, only after she sized up the scene and exited her patrol car did Phillips's truck start to move. Phillips agrees that he stopped on South Harris, near the target building's door. But he maintains that his truck was moving up the street when he first saw Blair, and that their vehicles nearly collided when she "popped out of the alley." R. 50-6, PageID 2746. When asked in deposition whether he saw Blair's car before it appeared in front of his moving vehicle, he answered: "No. No. She was barrelling through the alley." R. 44, PageID 2208.

We accept Phillips's version here—as we must. *Mehra*, 186 F.3d at 689. If, as Phillips posits, Blair "barrel[ed] through" the alley and nearly crashed into him, she would not have arrived in time to witness Phillips's truck parked outside the target building. And, the argument goes,

because nothing distinguished Phillips from any other passing motorist, Blair cannot support reasonable suspicion.

Nevertheless, Phillips's account, considered with the totality of the circumstances, offers reasonable suspicion to support his detention. *See Feathers v. Aey*, 319 F.3d 843, 851 (6th Cir. 2003) (holding that dispatched information originating from an anonymous tipster, combined with the totality of the circumstances, justified the *Terry* stop). Although Phillips's telling forecloses Blair's viewing his parked truck, Blair still had time to evaluate the situation and decide whether to question Phillips. The dispatch described an ongoing burglary with suspects loading items into a vehicle not seen by the informant. Neither party testified nor alleged that any other vehicles drove by the location during the initial confrontation or that any occupied vehicle other than Phillips's was present on the street outside of the target building's side door. Blair testified that she identified the building and, looking through Phillips's windshield in the dark, equated the female passenger's "bright . . . pink or orange shirt" with the orange head wrap noted in the dispatch. Moreover, Phillips's evasive responses to Blair's initial questioning raised her suspicion. In light of these facts, we conclude, contrary to the district court's view, that Blair made an objectively reasonable decision to detain Phillips in connection with the suspected burglary.

The district court highlighted—and Phillips emphasizes—that the races of Phillips and his female companion did not match those the dispatcher relayed and that just before she stopped to investigate the scene, the dispatcher conveyed that the burglars had gone back into the building. True, Blair's observations failed to seamlessly corroborate the dispatched suspect descriptions, as in *Feathers* for example. *See* 319 F.3d at 850 (the shirtless and bearded white man officers detained perfectly matched the dispatcher's description). But "[o]fficers are entitled to qualified immunity if they made a reasonable decision, even if it was mistaken." *Srisavath v. City of*

*Brentwood*, 243 F. App'x 909, 919 (6th Cir. 2007) (citing *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995)); *see also Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). And Blair's assessment did not completely miss the mark: she maintains that she identified Phillips as a white male (the paramedic later listed his race as "unknown"), which would not have ruled him out. As for the passenger, Blair believed that her brightly colored shirt matched the attire referenced in the dispatch. "[O]fficers of reasonable competence" could agree with Blair's actions, especially considering that she arrived on the scene of a rapidly evolving suspected burglary and found Phillips's truck just outside of the target building. *See Pray*, 49 F.3d at 1158 (citation omitted). As for Officers Bryne, Groves, Cazan, and McClain, they arrived after Phillips's initial detention, and clearly established law did not require them to second-guess Blair's decisions. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017).

After determining whether the police articulated a proper basis for the stop, we must decide "whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand." *Garza*, 10 F.3d at 1245 (quoting *United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986)). The district court never reached this question. The officers argue that Phillips's evasive responses to Blair's initial questions, Blair's desire to view the contents of the truck, and her suspicion that Phillips might possess accessible weapons justified the length of the detention and decision to remove Phillips from his vehicle. Phillips responds that Blair's detention exceeded the time needed to dispel her suspicions and that Byrne, Groves, Cazan, and McClain participated in the overlong detention despite knowing better.

"There is no rigid time limit for a *Terry* stop," and when the police's "initial queries do not dispel the suspicion that warranted the stop, further detention and questioning are appropriate." *Houston v. Clark Cty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999). A court

assessing whether a detention lasted too long "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

Phillips's interactions with the police provided ample justification for the scope of the detention. Phillips admits that his initial exchange with Blair lasted no more than one minute, and that during that time he did not immediately surrender his driver's license. And although Phillips insists that this interaction dispelled any suspicion that he committed a crime, this argument contradicts his own deposition testimony, in which he conceded that the initial interaction with Blair would not have allayed her suspicion of his involvement in the burglary. He also admitted in deposition that Blair could not have known whether he had access to a weapon.

Blair, Byrne, Groves, Cazan, and McClain reacted to a swiftly developing situation and nothing about Blair's brief, initial interaction with Phillips definitively ruled out his involvement in the suspected burglary. Further, once Groves arrived, the officers acted reasonably in asking Phillips to exit his truck for safety reasons and to dispel suspicions. *See United States v. Noble*, 762 F.3d 509, 521 (6th Cir. 2014) (reciting that police officers may order drivers and passengers out of an automobile without violating the Fourth Amendment); *Houston*, 174 F.3d at 815 (holding "several steps" of automotive *Terry* stop spanning thirty-five minutes to an hour "reasonably necessary to ensure the officers' safety or to confirm or dispel their suspicions").

Considering the totality of the circumstances, and accepting Phillips's facts, we conclude that the officers acted in an objectively reasonable manner in executing and concluding this *Terry* stop, entitling them to qualified immunity. We reverse the district court's denial and grant qualified immunity to Officers Blair, Byrne, Groves, Cazan, and McClain on the unreasonable seizure claim.

**B. False arrest**

The district court also denied the officers qualified immunity on Phillips's false arrest claim. "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)). The officers argue that Phillips's actions supplied ample support for probable cause to arrest him for obstructing official business. Phillips maintains the opposite. Agreeing with the officers, we reverse the district court and grant Officers Blair, Groves, Byrne, McClain, Cazan, and Rector qualified immunity on the false arrest claim.

A probable cause determination depends on whether, at the moment of arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The reviewing court must assess probable cause "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (citation omitted). "[E]ven if a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful." *Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 (6th Cir. 2011).

The officers arrested Phillips for obstructing official business in violation of Columbus City Code § 2321.31, which announces that "[n]o person . . . with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties."

*See* Columbus City Code § 2321.31(A).[1]   A conviction requires "(1) the performance of an unprivileged act (2) with the purpose of preventing, obstructing or delaying the performance by a public official of an authorized act within his official capacity (3) which hampers or impedes the public official in the performance of his lawful duties." *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005).   Ohio courts emphasize the affirmative act requirement, *see State v. Wellman*, 879 N.E.2d 215, 218 (Ohio Ct. App. 2007), and the parties train their attention on that element. Thus, we must focus on when Groves grabbed Phillips's arm and the ensuing moments.

The officers insist that Phillips refused to comply with orders to exit the truck and that this amounts to an affirmative act obstructing official duties.   Phillips argues that he recoiled from Groves because Groves's "assault" disrupted his balance and he needed to pull himself back into the truck to avoid falling, not to resist instructions.   His account acknowledges that he struggled with the officers, that Blair grabbed his right arm at one point, and that it took at least two officers to pull him away from the vehicle.   Phillips knew that the officers wanted him out of the truck, yet he did not exit voluntarily.

Cases from this circuit and Ohio courts supply few clear lessons about whether Officer Blair violated clearly established law by arresting Phillips for obstruction under these specific factual circumstances. *See Harlow*, 457 U.S. at 818.   In *Lyons*, for example, we granted qualified immunity because a woman's cursing and screaming at an officer would have allowed a reasonable officer to conclude that she committed affirmative acts interfering with police business.   417 F.3d at 574–75.   Although the woman did not physically resist, or even threaten to do so, her "overall pattern of behavior [was] one of resistance" and her "hostility and unwillingness to cooperate in

---

[1] Section 2321.31(A) tracks the language of Ohio Rev. Code Ann. § 2921.31(A).   Because the two codes overlap, state law interpreting the Ohio Code bears on our analysis of the Columbus ordinance. *See Patrizi v. Huff*, 690 F.3d 459, 464 (6th Cir. 2012).

physical and verbal ways" sufficed as an affirmative act. *Id.* at 574. In *Patrizi*, on the other hand, we affirmed the denial of qualified immunity as unsupported by probable cause when the arrestee "did not in any way exhibit aggressive, boisterous, or unduly disruptive conduct." 690 F.3d at 465–66. Significantly, though, the arrestee also "did not ignore instructions." *Id.* And in *Wellman*, the Ohio Court of Appeals found an arrestee who "actively prevented [officers] from talking to [a suspect] . . . by being belligerent and argumentative" committed affirmative acts supporting the obstruction offense. 879 N.E.2d at 218–19.

The struggle between Phillips and the officers, as told by Phillips, would paint for a reasonable officer an overall picture of resistance rather than cooperation. *See Lyons*, 417 F.3d at 575. That Phillips lost his balance when Groves grabbed his arm fails to explain why he continued gripping the door handle at least long enough to ask, "What the hell do you guys want me to do? You want me to get on the ground? Want me to put my hands behind my back?". And even if Phillips involuntarily recoiled from Groves's initial touch, he proceeded to struggle with the officers for several moments, ultimately requiring the efforts of at least three officers to, in Phillips's words, "eventually" pull him from the truck. Phillips's actions undoubtedly distracted the officers from investigating the burglary. Thus, viewing the facts in Phillips's favor, an officer witnessing the ordeal of Phillips's removal from the truck would reasonably conclude that the physical struggle constituted an affirmative act supporting a lawful arrest for obstruction. *See Kennedy*, 635 F.3d at 214 ("[A] court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful."). And at the very least, "in view of the less-than-precise contours of Ohio's affirmative-act requirement," Blair did not violate a clearly established constitutional right by arresting

Phillips. *Lyons*, 417 F.3d at 575. As a result, qualified immunity shields Officers Blair, Groves, Byrne, McClain, and Cazan from the false arrest claim.

Sergeant Rector, having arrived sometime after the events described above, justifiably relied on the information conveyed by the other officers. *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) ("[W]here individual police officers, acting in good faith and in reliance on the reports of other officers, have a sufficient factual basis for believing that they are in compliance with the law, qualified immunity is warranted."). After hearing Blair's account, Rector concluded that probable cause supported charging Phillips with obstruction. Phillips's arguments about Rector's knowledge of the dispatched information fail because this information sheds no light on the scuffle that precipitated the obstruction charge.

Finding that probable cause supported Phillips's obstruction arrest, we reverse the district court's denial and grant Officers Blair, Groves, Byrne, McClain, Cazan, and Rector qualified immunity on the false arrest claim.

### C. Malicious prosecution

Because Phillips's malicious prosecution claims against Officers Blair and Rector hinge on lack of probable cause, *see Sykes*, 625 F.3d at 308 (federal); *Froehlich v. Ohio Dep't of Mental Health*, 871 N.E.2d 1159, 1162 (Ohio 2007) (state), and because undisputed facts providing probable cause supported Phillips's arrest, we also reverse the district court's denial of qualified immunity on these claims.

### D. Retaliatory detention and arrest

The officers also argue that, without a probable cause finding, Phillips cannot maintain his retaliation claim against Officer Blair. The Supreme Court in *Reichle v. Howards* held that it had "never recognized a First Amendment right to be free from a retaliatory arrest that is supported by

probable cause; nor was such a right otherwise clearly established [in June 2006]." 566 U.S. 658, 664–65; *see also Marshall v. City of Farmington Hills*, 693 F. App'x 417, 425–27 (6th Cir. 2017); *cf. Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1954–55 (2018) (recognizing a narrow exception to the requirement to show a lack of probable cause where the plaintiff alleges an official municipal policy of retaliation). Without controlling authority clearly establishing a First Amendment right to be free from a retaliatory arrest otherwise supported by probable cause, we also reverse the denial of qualified immunity on this claim.

### E.  Excessive force

Finally, the district court denied Blair, Groves, Cazan, and McClain qualified immunity on Phillips's excessive force claim. Although the court addressed both (1) the officers' takedown of Phillips and (2) the use of mace against him, the officers concede a factual dispute with respect to Groves's use of mace and did not move for summary judgment on that portion of the claim. As to the force used in the officers' takedown, drawing on several of the conclusions reached above, we reverse the district court's denial of qualified immunity.

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Determining the reasonableness of the physical coercion "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* As with probable cause, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," as officers "are often forced to make split-second judgments—in circumstances

that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. The reasonability analysis includes some "built-in measure of deference to the officer's on-the-spot judgment." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

Phillips asserts the excessive force claim against Officers Blair, Groves, Cazan, and McClain. Groves extracted Phillips from the truck with Blair's assistance. After the officers removed Phillips from the truck, Cazan performed the "leg sweep" that took Phillips to the ground. All four of the officers assisted in handcuffing Phillips. Phillips alleges that the officers "piled on top of him, tearing the tendon in his forearm and bicep." Appellee's Br. at 45. Phillips's deposition confirmed that he meant "on top of" to mean "on each side pushing down." R. 44, PageID 2255.

*Severity of crime.* Phillips argues that the officers had time to assess the suspected crime scene prior to detaining him and that they knew Phillips had not burglarized the building when they pulled him from his truck. But Blair confirmed in her internal affairs interview that when the officers removed Phillips from his truck and took him to the ground, they still suspected that he participated in the reported burglary. As noted above, Phillips also acknowledged in deposition testimony that his initial interaction with Blair would not have dispelled her suspicion of his involvement in the burglary. Blair and the other officers—Groves, Cazan, and McClain arriving on the scene after Phillips's initial stop—reacted to a swiftly developing situation and could not have ruled out Phillips's involvement in the reported burglary. Thus, because burglary constitutes a serious crime, this factor weighs in favor of the officers.

*Threat to officer safety.* Phillips argues that a reasonable officer would conclude that he did not pose a threat to officer safety. But, as discussed above, Officers Blair and Groves decided to remove Phillips from his vehicle, in part, because they reasonably suspected that he had access

to weapons. Further, when the confrontation escalated into a struggle to remove Phillips from the truck, each of the officers reasonably believed that Phillips could lash out and harm them, supporting their efforts to restrain him and Officer Cazan's leg sweep. Therefore, this *Graham* factor also slightly favors the officers.

*Resistance to arrest.* Phillips contends that he "complied with all the officers' commands." Appellee's Br. at 52. As discussed at length above, however, many undisputed actions by Phillips tell a different tale. He continued to hold onto the door handle after Groves's initial touch and the officers ultimately needed to pull him from the vehicle. A reasonable officer on the scene could easily interpret these actions—in the heat of the moment—to constitute resistance. Again, the balance on this *Graham* factor tips in favor of the officers.

The dissent assumes that Phillips's subjective reasons for grabbing onto the door handle would have been apparent to any reasonable officer. But Phillips's own testimony shows that—regardless of his motivations—he grabbed the handle for long enough to ask several questions and for two more officers to approach him. A reasonable officer could have interpreted Phillips's clutching of the door handle as an act of resistance.

Considering the totality of the circumstances, including the undisputed facts and circumstances they confronted on the scene, the officers acted reasonably in removing Phillips from his car, taking him to the ground, and handcuffing him. We reverse the denial of immunity on the excessive force claims against Blair, McClain, Cazan, and Groves with respect to their takedown and handcuffing of Phillips.

**IV.**

We REVERSE the denial of qualified immunity on each of Phillips's claims, recognizing that the use-of-mace portion of Phillips's excessive force claim against Officer Groves will proceed in the district court.

**HELENE N. WHITE, Circuit Judge, concurring in part and dissenting in part.**

I agree with the majority that Officers Karen Blair, Jean Byrne, Adam Groves, Chad Cazan, and Douglas McClain are entitled to qualified immunity on Dale Phillips's unreasonable-seizure claims. I also agree that Sergeant Lowell Rector is entitled to qualified immunity on Phillips's false-arrest and malicious-prosecution claims.[1] I dissent from the grant of qualified immunity on the false-arrest and excessive-force claims against Blair, Groves, McClain, and Cazan, the malicious-prosecution and retaliatory-arrest claims against Blair, and the false-arrest claim against Byrne.[2]

**I.**

The district court properly denied qualified immunity on Phillips's false-arrest, malicious-prosecution, retaliatory-arrest, and excessive-force claims based on Phillips's description of the events after he was ordered from his truck.[3]

After Phillips gave Blair his license, Blair ordered him out of the truck. Phillips responded, "You illegally stopped me for no reason and I stopped my vehicle. You asked me to turn my vehicle off and I have turned my vehicle off. You asked for my license and I have given you my license. Now you want me to step out of my vehicle. Why?" (R. 44, PID 2235.) Rather than answer, Blair pulled Phillips's door open, and Phillips "start[ed] exiting the vehicle." (*Id.*) Because Phillips did not have running boards on his truck and his truck was high off the ground,

---

[1] As the majority notes, Rector did not arrive to the scene until after Phillips had been arrested and placed in the police cruiser, and the evidence in the record, even when viewed in a light most favorable to Phillips, suggests that Rector reasonably relied on the other officers' characterization of Phillips's actions during the arrest.

[2] Phillips asserted both a federal and state malicious-prosecution claim, and both require the plaintiff to show a lack of probable cause. *See Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (federal); *Froehlich v. Ohio Dep't of Mental Health*, 871 N.E.2d 1159, 1162 (Ohio 2007) (state).

[3] Phillips testified both at his state-court trial and at a deposition in this action. Unless otherwise noted, his testimony is materially the same. The following facts are taken from his deposition in this action.

he gripped the handle on the door jamb with his right hand while simultaneously putting his left leg out of the truck and turning his body to exit. At that point, Groves came up to him and "attack[ed] [him] by grabbing [his] left arm and twisting it." (*Id.* at PID 2236.) Phillips asked, "Why are you grabbing me? Why are you assaulting me?" Groves responded, "Stop resisting," and "turn[ed] his grab into a jerking motion." (*Id.*) Phillips held onto the handle so he could keep his balance and not fall on top of Groves. Blair then came around the door and grabbed Phillips's right arm, apparently to take his hand off the handle. Phillips got out of the truck on his feet, with Blair and Groves each holding an arm. The other officers made contact with Phillips and were each pulling him in their direction. Phillips said, "What the hell do you guys want me to do? Get on the ground? Put my hands behind my back? What?" (*Id.* at PID 2237.) Phillips was "letting them take [him] wherever they want[ed]." (*Id.*) Then he said, "I'm ex-state patrol, you dumb asses." (*Id.*)

Immediately after that statement, Officer Cazan grabbed Phillips's legs, and Phillips fell to the pavement. When Phillips fell, all of the officers came down with him and pushed him into the ground. Phillips's left hand was already behind his back, and he helped officers get his right hand behind his back. The officers handcuffed him and continued to push him into the ground. After he was handcuffed, an officer sprayed mace into his eyes. Phillips's tendon in his arm was torn as a result of the altercation.

Phillips was charged with obstruction of official business in violation of Columbus City Code § 2321.31. Phillips was ultimately acquitted of the obstruction-of-official-business charge.

## II.

The majority grants qualified immunity on the false-arrest, malicious-prosecution, and retaliatory-arrest claims on the basis that a reasonable officer would have had probable cause to

- 19 -

arrest and prosecute Phillips for violating the obstruction-of-official-business ordinance. However, Phillips's testimony adequately supports that he did not perform the affirmative act necessary to violate the obstruction ordinance,[4] and a reasonable officer could not conclude there was probable cause to arrest him.

"A person cannot be guilty of obstructing official business by doing nothing or failing to act." *State v. Wellman*, 879 N.E.2d 215, 218 (Ohio Ct. App. 2007). Viewing Phillips's testimony in a light most favorable to him, nothing he did or said would constitute an affirmative act under the ordinance.

As the majority seems to acknowledge, Phillips's statements to Blair would not qualify as an affirmative act. *Smith v. City of Wyoming*, 821 F.3d 697, 716 (6th Cir. 2016) ("Ohio courts have not treated speech alone as an act for purposes of the statute."); *State v. Stayton*, 709 N.E.2d 1224, 1227 (Ohio Ct. App. 1998) ("The crossing point must involve some form of conduct beyond mere argument."). Phillips's testimony does not indicate that his speech constituted fighting words or was persistently and unduly disruptive. *See Stayton*, 709 N.E.2d at 1227 ("[P]rovided that the language does not constitute fighting words, a citizen's verbal assault on a police officer does not, standing alone, constitute criminal conduct."); *Patrizi v. Huff*, 690 F.3d 459, 464 (6th Cir. 2012) ("To date, Ohio courts have affirmed obstruction convictions premised on true speech only when that speech involved yelling, cursing, aggressive conduct, and/or persistent disruptions after warnings from the police against interrupting the investigation."). Nor would Phillips's failure to immediately act on Blair's requests constitute an affirmative act. *See State v. McCrone*, 580 N.E.2d 468, 470–71 (1989) ("[The defendant] testified that he told [the officer] his name, address,

---

[4] As the majority notes, state law interpreting the Ohio obstruction-of-official-business statute informs our interpretation of the City of Columbus's obstruction-of-official-business ordinance. *See Patrizi v. Huff*, 690 F.3d 459, 464 (6th Cir. 2012).

and Social Security number but that he refused to produce his driver's license when [the officer] asked for verification of his identity. However, refusing to cooperate with a law enforcement officer is not punishable conduct."); *see also State v. Vitantonio*, 995 N.E.2d 1291, 1293 (Ohio Ct. App. 2013) (holding that defendant's refusal to open residence door to police responding to a disturbance call was not an affirmative act); *Columbus v. Michel*, 378 N.E.2d 1077, 1078 (Ohio Ct. App. 1978) (same).

Defendants state that they "accept, for purposes of summary judgment, [Phillips's] allegations as to his 'compliance' in being handcuffed," and defendants argue that Phillips's "refusal to comply with the orders to exit his truck alone suffices to support probable cause for the charge of 'obstruction of official business.'" (Appellants' Br. at 51.) However, defendants' concession and the majority's analysis fail to account for the fact that Phillips's testimony supports that he did not resist the officers' efforts to take him from the truck and arrest him. Phillips testified that he voluntarily started to exit the truck; tried not to fall onto Groves when Groves pulled him; was taken out of the truck; asked what the officers wanted him to do to comply; and let the officers take him wherever they wanted him to go.

Even Phillips's grasp of the handle when Groves pulled him from the truck would not qualify as an affirmative act under the ordinance. *Smith* denied officers qualified immunity for false arrest under the Ohio obstruction statute under similar circumstances. In *Smith*, officers arrested the plaintiff for obstructing official business under Ohio law because during an investigation, she pulled her hand back after an officer grabbed it. 821 F.3d at 715. The court held that the officers could not have believed there was probable cause to arrest the plaintiff because the withdrawal of her hand "may have been simply an involuntary reaction to an unexpected touch." *Id.* at 716. The court also noted that the plaintiff had not delayed the officers

for "more than a few seconds," and fully cooperated in her arrest after that act. *Id.* Here, viewing the evidence in a light most favorable to Phillips, his grasp of the handle could have simply been "an involuntary reaction to an unexpected touch" that prevented him from falling on Groves. Moreover, Phillips testified that his removal from the truck "happened very fast" in a "very fluid" motion (R. 44, PID 2245), comparable timing to the delay of "a few seconds" in *Smith.* 821 F.3d at 716; *see also State v. Harris*, 121 N.E.3d 21, 28 (Ohio Ct. App. 2018) ("[T]he obstructing official business statute . . . 'does not criminalize [every] minor delay, annoyance, irritation or inconvenience.'" (internal quotation marks omitted) (quoting *Vitantonio*, 995 N.E.2d at 1294)); *City of Lakewood v. Simpson*, 2002 WL 1824975, at *3 (Ohio Ct. App. Aug. 8, 2002) (holding that defendant's "only active conduct . . . to attempt to close his door" was not an affirmative act because "there was no evidence that the officers, when they subsequently pushed through, were more than momentarily hindered or impeded by the attempt"). Thus, a reasonable officer would not view Phillips's momentary grasp of the truck's handle as an affirmative act that obstructed official business. Even considering the totality of Phillips's conduct, his testimony does not show that a reasonable officer would conclude that there was probable cause to believe he was obstructing official business.[5] Thus, viewing the facts in a light most favorable to Phillips, his arrest and prosecution without probable cause violated his clearly established rights.

## III.

Applying the *Graham*[6] factors, the majority concludes that Blair, Groves, Cazan, and McClain "acted reasonably in removing Phillips from his car, taking him to the ground, and

---

[5] Defendants also argue that Phillips has not shown that there was a causal connection between his speech and arrest. However, Phillips's testimony that Blair relatively quickly ordered him out of the truck and arrested him after he contested the stop creates a material issue of fact as to causation.

[6] The Supreme Court in *Graham v. Connor* listed the following factors as relevant to the reasonableness inquiry: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate

handcuffing him." (Maj. Op. at 16.) Again, the majority fails to fully account for Phillips's testimony and consider the facts in the light most favorable to Phillips.

Although the first *Graham* factor—the "severity of the crime"—weighs in favor of the officers, its weight is moderated in two respects. The severity of the crime is lessened by the fact that the allegedly burgled building was vacant, and at least some of the responding officers knew that fact during the stop. McClain testified that the fact that the building was vacant had been conveyed at some point by dispatch. Moreover, the majority's reliance on Phillips's testimony that Blair could not have known he was involved in the burglary ignores that although Phillips initially testified that he "guess[ed]" Blair would not know he was not involved in the burglary when she ordered him out of the truck (R. 44, PID 2228, 2232), he later testified that after his review of the evidence and discovery, Blair should have known that he was not involved:

> Q.     And you testified when asked a question that at the time Officer Blair would have had no way of knowing about whether or not you or Micah were involved in a burglary?
>
> A.     Yes. I remember.
>
> Q.     But today based on your review of the discovery and evidence in this case you do know that Officer Blair -- or that it was radio dispatched prior to your being stopped that all the suspects were back in the building?
>
> A.     Yes, that's correct.
>
> Q.     Okay. And you also know that prior to you being removed from the car Officer Byrne had cleared -- or had -- Officer Byrne testified that she did not believe that -- that she didn't believe that Micah was involved in the burglary?
>
> A.     Correct.

(*Id.* at PID 2278–79.) Under these circumstances, the first *Graham* factor only slightly supports the use of force here.

---

threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. 386, 396 (1989).

The second *Graham* factor weighs against the officers' use of force because the facts in the light most favorable to Phillips show that a reasonable officer would not perceive him as a threat. Phillips's testimony is that after being stopped, he calmly asked again and again why he was being stopped. There is no indication from his testimony that he threatened the police, acted violently, or had a firearm. Contrary to the majority's assertion that there was a "struggle" (Maj. Op. at 16), Phillips's testimony is clear that when he was taken from the truck, he did not resist. Instead, he asked the officers what they wanted him to do and let them take him wherever they wanted.

The third *Graham* factor weighs against the officers' use of force because Phillips testified that he did not resist arrest. Phillips testified that when Blair opened the door, he began to exit the vehicle. He further testified that after Groves grabbed him and the other officers took him from the truck, he asked how they wanted him to comply. When he was out of the truck, he was letting the officers take him wherever they wanted him to go. In response to this compliance, Cazan used a leg sweep and the officers took him down to the ground. This court has repeatedly held that an officer may not use such excessive force with a compliant arrestee. *See Brown v. Lewis*, 779 F.3d 401, 418–19 (6th Cir. 2015) ("[S]ince at least 2009, the use of violence against a subdued and non-resisting individual has been clearly established as excessive, regardless of whether the individual had been placed in handcuffs."); *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008) ("[T]he right to be free from physical force when one is not resisting the police is a clearly established right."). In light of Phillips's testimony of compliance, there is a genuine question whether officers used unreasonable force by pulling him from the truck and taking him down to arrest him. *See Brown*, 779 F.3d at 419 ("[P]ulling a compliant detainee out of her car and throwing her to the ground in the process of handcuffing her is clearly established excessive force."); *Folks v. Petitt*, 676 F. App'x 567, 572 (6th Cir. 2017) ("[W]e hold that when a suspect is

not resisting and not dangerous, it is objectively unreasonable, indeed gratuitous, to forcibly pull him from his car and slam him against it with enough force to cause facial, neck, and head contusions.").

The majority finds adequate resistance in the mere fact that Phillips held onto the handle to prevent himself from falling onto Groves. However, viewing the facts in the light most favorable to Phillips, a reasonable officer would not interpret that action as anything more than an involuntary reflex or passive resistance. *See McCaig v. Raber*, 515 F. App'x 551, 555 (6th Cir. 2013) ("Although [plaintiff] admits that he did not put his hand behind his back as requested by [the officer] (because he was being restrained from doing so) and 'jerked away' when [the officer] screamed loudly in his ear, a reasonable jury could find these facts insufficient to justify [the officer's] use of force."); *Meirthew v. Amore*, 417 F. App'x 494, 498 (6th Cir. 2011) (holding that takedown was unreasonable because "[w]hile [the plaintiff] refused to spread her feet to be searched, such resistance was minimal" and amount of force used was disproportionate). Further, Phillips's testimony that his removal from the truck "happened very fast" and "was a very fluid action" belies the claim that Phillips engaged in more than momentary passive resistance. (R. 44, PID 2245.) In any event, the use of a takedown and physical force that tore Phillips's tendon in his arm is disproportionate to Phillips's momentary passive resistance. *See Lawler v. City of Taylor*, 268 F. App'x 384, 386–87 (6th Cir. 2008) (holding that "use of force in throwing [the plaintiff] to the floor was disproportionate to any threat [officer] faced" where the plaintiff had insulted the officer and slightly raised his arm).

In sum, viewing the facts in a light most favorable to Phillips, the officers used excessive force against him and violated his clearly established rights.

**IV.**

For the above reasons, I respectfully dissent from the grant of qualified immunity to Blair, Groves, McClain, and Cazan on the false-arrest and excessive-force claims, to Blair on the malicious-prosecution and retaliatory-arrest claims, and to Byrne on the false-arrest claim.